COMMONWEALTH of Pennsylvania,
Appellee

v.

Miguel Angel PEREZ, II, Appellant.

Superior Court of Pennsylvania.

Argued April 2, 2014.

Filed July 9, 2014.

Reargument Denied Sept. 15, 2014.

Craig E. Kauzlarich, Carlisle, for appellant.

Charles Volkert, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

BEFORE: DONOHUE, J., ALLEN, J., and MUNDY, J.

OPINION BY MUNDY, J.:

Appellant, Miguel Angel Perez, II, appeals from the July 24, 2013 judgment of sentence of nine to 23 months' imprisonment plus two years' probation after he pled *nolo contendere* to one count of indecent assault.[1] Relevant to this appeal, the trial court also ordered Appellant to regis-

ter as a sex offender for a period of 25 years pursuant to the newly enacted registration requirements under Pennsylvania's Sex Offender Registration and Notification Act (SORNA). *See* 42 Pa.C.S.A. §§ 9799.14, 9799.15. After careful review, we affirm.

We summarize the relevant facts and procedural history of this case as follows. On January 23, 2013, the Commonwealth filed an information charging Appellant with one count each of rape and sexual assault, four counts of aggravated indecent assault, and four counts of indecent assault.[2] On March 15, 2013, pursuant to a plea agreement with the Commonwealth, Appellant pled *nolo contendere* to one count of indecent assault as a first-degree misdemeanor. On July 23, 2013, Appellant filed a "Motion to find 42 Pa.C.S. § 9799.14 Unconstitutional as Applied and Apply Law Existing at the Time of the Offense." The trial court denied the motion on the same day and imposed a sentence of nine to 23 months' imprisonment to be followed by two years' probation. The trial court also directed Appellant to register as a sex offender for the next 25 years, pursuant to the new registration requirements under SORNA. *See* 42 Pa.C.S.A. §§ 9799.14(c)(1.2), 9799.15(a)(2). On August 2, 2013, Appellant filed a timely notice of appeal.[3]

On appeal, Appellant presents one issue for our review.

Did the [s]entencing [c]ourt err when it denied Appellant's [m]otion to find [ ] 42 Pa.C.S. § 9799.14 unconstitutional as retroactively applied in this case and ordered Appellant to comply with sexual offender registration for a period of

---

1. 18 Pa.C.S.A. § 3126(a)(4).

2. 18 Pa.C.S.A. §§ 3121(a)(3), 3124.1, 3125(a)(1), 3125(a)(4), 3126(a)(1), and 3126(a)(4), respectively.

3. Appellant and the trial court have timely complied with Pa.R.A.P.1925.

twenty-five (25) years rather than ten (10) years?

Appellant's Brief at 4.

Essentially, Appellant argues that the *Ex Post Facto* Clauses of the federal and state constitutions prohibit the retroactive application of the 25–year registration requirement to him. Appellant's Brief at 8, 17. As this issue solely presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Elia,* 83 A.3d 254, 266 (Pa.Super.2013) (citation omitted). We elect to address Appellant's federal constitutional claim first.[4]

■ Article I, Section 10 of the Federal Constitution prohibits the several States from enacting any *"ex post facto* Law[.]"[5] U.S. Const. Art. I, § 10. As the Supreme Court recently pointed out, "[t]he phrase *'ex post facto* law' was a term of art with an established meaning at the time of the framing." *Peugh v. United States,* —— U.S. ——, 133 S.Ct. 2072, 2081, 186 L.Ed.2d 84 (2013). As identified by Justice Samuel Chase in *Calder v. Bull,* 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798), the Su-

4. Although the Supreme Court has addressed the federal version of SORNA on prior occasions, it has never had the occasion to address its constitutionality vis-à-vis the *Ex Post Facto* Clause. *See United States v. Kebodeaux,* —— U.S. ——, 133 S.Ct. 2496, 2505, 186 L.Ed.2d 540 (2013) (concluding Congress had the power under Article I, Section 8 of the Federal Constitution pursuant to Military Regulation and Necessary and Proper Clauses to retroactively apply SORNA); *Reynolds v. United States,* —— U.S. ——, 132 S.Ct. 975, 984, 181 L.Ed.2d 935 (2012) (concluding that SORNA's requirements would not apply retroactively to offenders whose offenses occurred prior to enactment until so directed by the Attorney General pursuant to 42 U.S.C. § 16913); *Carr v. United States,* 560 U.S. 438, 458, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010) (concluding on a statutory basis that imposition of criminal liability under SORNA for not adhering to registration requirements would not apply to offenders whose interstate travel preceded SORNA's enactment).

However, we note that all of the Courts of Appeals have concluded that the federal version of SORNA does not violate the federal *Ex Post Facto* Clause, save the District of Columbia Circuit, which has not addressed the question, and the Federal Circuit. *See United States v. Elkins,* 683 F.3d 1039, 1045 (9th Cir.2012); *United States v. Felts,* 674 F.3d 599, 606 (6th Cir.2012); *United States v. Leach,* 639 F.3d 769, 773 (7th Cir.2011); *United States v. DiTomasso,* 621 F.3d 17, 25 (1st Cir.2010), *abrogated on other grounds, Reynolds v. United States,* —— U.S. ——, 132 S.Ct. 975, 181 L.Ed.2d 935 (2012); *United States v. Guzman,* 591 F.3d 83, 94 (2d Cir. 2010), *cert. denied, Guzman v. United States,* 561 U.S. 1019, 130 S.Ct. 3487, 177 L.Ed.2d 1080 (2010); *United States v. Shenandoah,* 595 F.3d 151, 158–159 (3d Cir.2010), *cert. denied, Shenandoah v. United States,* 560 U.S. 974, 130 S.Ct. 3433, 177 L.Ed.2d 341 (2010); *United States v. Gould,* 568 F.3d 459, 466 (4th Cir.2009), *cert. denied, Gould v. United States,* 559 U.S. 974, 130 S.Ct. 1686, 176 L.Ed.2d 186 (2010); *United States v. Young,* 585 F.3d 199, 203–206 (5th Cir.2009); *United States v. Ambert,* 561 F.3d 1202, 1207 (11th Cir.2009); *United States v. May,* 535 F.3d 912, 919–920 (8th Cir.2008); *cert. denied, May v. United States,* 556 U.S. 1258, 129 S.Ct. 2431, 174 L.Ed.2d 229 (2009), *abrogated on other grounds, Reynolds v. United States,* —— U.S. ——, 132 S.Ct. 975, 181 L.Ed.2d 935 (2012); *United States v. Hinckley,* 550 F.3d 926, 938 (10th Cir.2008), *cert. denied, Hinckley v. United States,* 556 U.S. 1240, 129 S.Ct. 2383, 173 L.Ed.2d 1301 (2009), *abrogated on other grounds, Reynolds v. United States,* —— U.S. ——, 132 S.Ct. 975, 181 L.Ed.2d 935 (2012).

5. Relative to his federal constitutional challenge, Appellant's Rule 1925(b) statement only states that the retroactive application violates "Article 1, Section 9 of the United States Constitution." Appellant's Rule 1925(b) Statement, 8/15/13, at 2. However, Article I, Section 9 of the Federal Constitution is not applicable to the instant constitutional challenge, as Article I, Section 9 is solely devoted to constraints on Congressional power, whereas Section 10 is solely devoted to constraints on state power. *See generally* U.S. Const. Art. I, §§ 9, 10. However, because we consider this to be merely a typographical error, we decline to find waiver on this basis.

preme Court has historically analyzed challenges under the *Ex Post Facto* Clause pursuant to four distinct categories.

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Id.* at 390. The instant case deals with the third category in *Calder*, a law "that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed[.]" *Id.* "The touchstone of this Court's inquiry is whether a given change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Peugh, supra* at 2082, *quoting Garner v. Jones*, 529 U.S. 244, 250, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). We conduct our analysis in two steps. First, we must look to the legislature's subjective purpose. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (internal quotations marks and citations omitted). "If the intention of the legislature was to impose punishment, that ends the inquiry." *Id.* However, if the legislature prefers to refer to the statute as imposing a civil regulatory scheme, a more searching inquiry in the second step is required. *Id.* In conducting this second step inquiry, "we must [ ] examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id.* The Supreme Court has held that only the "clearest proof" will suffice to override the legislature's preferred classification of the statute. *Id.*

As noted by the trial court, the General Assembly stated in its policy declarations that the provisions of SORNA were not criminal.

### § 9799.11. Legislative findings and declaration of policy

. . .

**(b) Declaration of policy.**—The General Assembly declares as follows:

. . .

> (2) It is the policy of the Commonwealth to require the exchange of relevant information about sexual offenders among public agencies and officials and to authorize the release of necessary and relevant information about sexual offenders to members of the general public as a means of assuring public protection and **shall not be construed as punitive.**

42 Pa.C.S.A. § 9799.11(b)(2) (emphasis added).

Appellant concedes that this statement from the General Assembly satisfies the first prong of the *Smith* framework as to the legislature's subjective intent, and Appellant does not argue to the contrary. *See* Appellant's Brief at 9 n. 3. We will therefore proceed to the second prong and more searching inquiry required by *Smith*.[6]

---

6. The trial court did not engage in the second part of the *Smith* test and instead rested on the General Assembly's statement quoted above as well as the cases of *Commonwealth v. Lee*, 594 Pa. 266, 935 A.2d 865 (2007), and *Commonwealth v. Fleming*, 801 A.2d 1234 (Pa.Super.2002), which discussed the civil nature of predecessor statutes, and not the current statute at issue in this case. *See* Trial Court Opinion, 9/5/13, at 3–4.

In analyzing the second prong of *Smith,* the Supreme Court in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), mandated a seven-factor test to determine whether the effects of a statute are sufficiently punitive to override the legislature's preferred categorization.

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

*Id.* at 168–169, 83 S.Ct. 554. Having concluded above that the General Assembly intended this statute to be considered non-punitive, in analyzing the *Kennedy* factors "we look behind the legislature's **preferred** classification to the law's substance, focusing on its purpose and effects." *Smith, supra* at 107, 123 S.Ct. 1140 (Souter, J., concurring in the judgment) (emphasis added). This analysis is not one of mathematics, as the Supreme Court has since clarified that "[t]his list of considerations is, however, 'neither exhaustive nor dispositive.' " *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 365 n. 7, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). Accordingly, no one factor controls the analysis in either direction. *Id.*

Turning to the first factor, Appellant argues that the new registration requirements impose an affirmative restraint by the very language of the statute. Specifically, Appellant notes that "[t]he statute at issue requires periodic, in-person verification of a registrant's personal information in addition to *ad hoc* appearances to update information as changes occur and appearances to disclose intended international travel at least twenty-one (21) days prior." Appellant's Brief at 18. The relevant sections of the Act described above by Appellant, provide in part, as follows.

### § 9799.15. Period of registration

. . .

**(e) Periodic in-person appearance required.**—Except as provided in subsection (f) and subject to subsections (g) and (h), an individual specified in section 9799.13 **shall appear in person** at an approved registration site to provide or verify the information set forth in section 9799.16(b) (relating to registry) and to be photographed as follows:

> (1) An individual convicted of a Tier I sexual offense shall appear annually.
>
> (2) An individual convicted of a Tier II sexual offense shall appear semiannually.
>
> (3) An individual convicted of a Tier III sexual offense shall appear quarterly.
>
> (4) An individual required to register pursuant to section 9799.13(7.1) shall appear annually.

. . .

**(g) In-person appearance to update information.**—In addition to the periodic in-person appearance required in subsections (e), (f) and (h), an individual specified in section 9799.13 **shall appear in person** at an approved registration site within three business days to provide current information relating to:

> (1) A change in name, including an alias.
>
> (2) A commencement of residence, change in residence, termination of residence or failure to maintain a resi-

dence, thus making the individual a transient.

(3) Commencement of employment, a change in the location or entity in which the individual is employed or a termination of employment.

(4) Initial enrollment as a student, a change in enrollment as a student or termination as a student.

(5) An addition and a change in telephone number, including a cell phone number, or a termination of telephone number, including a cell phone number.

(6) An addition, a change in and termination of a motor vehicle owned or operated, including watercraft or aircraft. In order to fulfill the requirements of this paragraph, the individual must provide any license plate numbers and registration numbers and other identifiers and an addition to or change in the address of the place the vehicle is stored.

(7) A commencement of temporary lodging, a change in temporary lodging or a termination of temporary lodging. In order to fulfill the requirements of this paragraph, the individual must provide the specific length of time and the dates during which the individual will be temporarily lodged.

(8) An addition, change in or termination of email address, instant message address or any other designations used in Internet communications or postings.

(9) An addition, change in or termination of information related to occupational and professional licensing, including type of license held and license number.

. . .

**(i) International travel.**—In addition to the periodic in-person appearance required in subsection (e), an individual specified in section 9799.13 **shall appear in person** at an approved registration site no less than 21 days in advance of traveling outside of the United States. The individual shall provide the following information:

(1) Dates of travel, including date of return to the United States.

(2) Destinations.

(3) Temporary lodging.

. . .

42 Pa.C.S.A. §§ 9799.15(e), 9799.15(g), 9799.15(i) (emphases added).

We begin by noting that with regard to the Federal *Ex Post Facto* Clause and sex offender registration schemes, we do not write on a blank slate. Rather, we must take into account the prior precedential decisions of the United States Supreme Court. In *Smith,* the Supreme Court rejected the argument that the Alaska registration requirements involved an affirmative disability or restraint, in part because the Alaska statute "does not require these updates to be made in person." *Smith, supra* at 100–101, 123 S.Ct. 1140 In addition, our Supreme Court suggested that this factor could weigh in favor of a defendant if the statute imposed a restraint directly, rather than through a secondary effect. *See Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962, 974 (2003) (stating, "[t]he conclusion that the provisions here at issue do not work an affirmative disability is buttressed by the fact that the source cases cited by [*Kennedy* ] in support of this factor each involved a statute imposing a deprivation or restraint upon the individual directly, rather than through a secondary effect[ ]").[7]

7. In *Williams,* our Supreme Court was con-    sidering a claim under the Due Process

With this statute, we conclude that Appellant's distinction is persuasive. Applied to Appellant, who was convicted of a Tier II offense, he is affirmatively required by the language of the statute to appear in-person at a facility a minimum of 50 times over the next 25 years. Although some in-person visits for updates may be required based on Appellant's free choices in life, such as moving to a new address or changing his appearance, the Act requires these 50 in-person visits even if there is no change to his information whatsoever. This is not a "secondary effect" of SORNA, but rather this is an affirmative constraint on Appellant's conduct imposed directly by SORNA itself. Based on these considerations, we conclude that the first *Kennedy* factor weighs in favor of finding SORNA punitive.

■ The second *Kennedy* factor is whether the registration requirement has been historically regarded as punishment. For this factor, Appellant argues that the Act's registration requirements are tantamount to probation and parole supervision, which Appellant views as "a historic [form of] punishment." Appellant's Brief at 19. Appellant also highlights that "[f]ailure to appear and provide accurate information results in mandatory minimum incarceration of two (2), three (3), five (5) or seven (7) years." *Id., citing* 42 Pa.C.S.A. § 9718.4.

The position Appellant takes is one previously held by the United States Court of Appeals for the Ninth Circuit in *Smith. Doe I v. Otte,* 259 F.3d 979, 987 (9th Cir. 2001), *reversed, Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

However the Supreme Court rejected the analogy, concluding as follows.

The Court of Appeals held that the registration system is parallel to probation or supervised release in terms of the restraint imposed. This argument has some force, but, after due consideration, we reject it. Probation and supervised release entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction. By contrast, offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision. Although registrants must inform the authorities after they change their facial features (such as growing a beard), borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so. A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense.

*Smith, supra* at 101–102, 123 S.Ct. 1140 (internal citations omitted). Although Appellant is correct that the "in-person" registration requirement renders the statute meaningfully different from that in *Smith* for the purposes of the first *Kennedy* factor, Appellant does not argue how that difference renders it constitutionally different for this second factor. As a result, we conclude the second *Kennedy* factor weighs against finding SORNA punitive.

■ The third factor involves the requirement of scienter.[8] "The existence of a scienter requirement is customarily an important element in distinguishing crimi-

---

Clause, not the *Ex Post Facto* Clause. However, we find *Williams* helpful to our analysis, as our Supreme Court utilized the same seven *Kennedy* factors in its discussion.

8. Scienter is defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission." Black's Law Dictionary 1373 (8th ed. 2004).

nal from civil statutes." *Kansas v. Hendricks,* 521 U.S. 346, 362, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (citation omitted). Here, Appellant argues that this factor weighs in favor of concluding the Act is punitive because "nearly all of the offenses which incur registration upon conviction ... require a showing on intentional or knowing mental status." Appellant's Brief at 19.

In *Smith,* the Alaska statute at issue had similar registration requirements as the statute in the instant appeal. Specifically, the Alaska statute's requirement to register, and the duration of the registration requirement, was triggered based on the underlying offense the defendant was found guilty of.

> If the offender was convicted of a single, nonaggravated sex crime, he must provide annual verification of the submitted information for 15 years. If he was convicted of an aggravated sex offense or of two or more sex offenses, he must register for life and verify the information quarterly. The offender must notify his local police department if he moves. A sex offender who knowingly fails to comply with the Act is subject to criminal prosecution.

*Smith, supra* at 90, 123 S.Ct. 1140

As noted above, Appellant is required to register for 25 years because he was convicted of a Tier II sexual offense. *See* 42 Pa.C.S.A. §§ 9799.14(c)(1.2); 9799.15(a)(2). However, in *Smith,* the Supreme Court concluded that the scienter factor vis-à-vis the Alaska statute was entitled to "little weight" in its analysis because "[t]he regulatory scheme applies only to past conduct, which was, and is, a crime." *Smith, supra* at 105, 123 S.Ct. 1140 Appellant has not argued any meaningful distinction between the two statutes vis-à-vis this factor to permit us to depart from the Supreme Court's instruction. Therefore, we follow the Supreme Court's direction in determining that this factor does not weigh in favor of concluding that SORNA is punitive in nature.

■ The fourth *Kennedy* factor is whether SORNA has the effect of promoting deterrence and retribution. Appellant argues that some of the legislative findings suggest a deterrent purpose behind the statute.

**§ 9799.11. Legislative findings and declaration of policy**

(a) **Legislative findings.**—The General Assembly finds as follows:

> . . .

> (2) This Commonwealth's laws regarding registration of sexual offenders need to be strengthened. The Adam Walsh Child Protection and Safety Act of 2006 provides a mechanism for the Commonwealth to increase its regulation of sexual offenders in a manner which is nonpunitive but offers an increased measure of protection to the citizens of this Commonwealth.

> . . .

(4) Sexual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest.

(5) Sexual offenders have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government.

(6) Release of information about sexual offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.

(7) Knowledge of whether a person is a sexual offender could be a significant factor in protecting oneself and one's family members, or those in care of a group or community organization, from recidivist acts by such offenders.

. . .

42 Pa.C.S.A. § 9799.11(a).

There can be no doubt, and we believe the Commonwealth acknowledges such, that the statute has a deterrent purpose and effect. The above-quoted findings significantly promote deterrence insofar as the dissemination of the required information allows law enforcement and communities at large to engage in pre-emptive self-protection. However, the Supreme Court has instructed that this observation is not the end of the inquiry on this factor.

> The State concedes that the statute might deter future crimes. Respondents seize on this proposition to argue that the law is punitive, because deterrence is one purpose of punishment. This proves too much. Any number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions criminal ... would severely undermine the Government's ability to engage in effective regulation.

*Smith, supra* at 102, 123 S.Ct. 1140 Additionally, "[c]ourts have found that some deterrent effect does not negate the overall remedial and regulatory nature of an act and deterrence can serve both criminal and civil goals." *State v. Trosclair*, 89 So.3d 340, 353 (La.2012) (citations omitted). We also note the Supreme Court of Louisiana's suggestion that a legislature can create a statute of deterrence without crossing the line as to make it punitive, by considering the nature of the offenders who will be subject to its parameters.

> [A]rguably retributive aspects, such as the length of supervision, though directly related to the degree and nature of the offense, have nevertheless been found to be consistent with the regulatory objectives if reasonably related to the danger of recidivism. By imposing conditions of supervision on sex offenders with child victims, the provision herein is specifically designed to reduce the likelihood of future crimes and is, therefore, reasonably related to the danger of recidivism.

*Id.*

As noted above, there is much in this statute designed for deterrence, as well as some aspects of retribution given the new length of registration. However, taking into account the high risk of recidivism, the General Assembly is permitted to have some deterrent and retributive effects in its legislation as long as they are "consistent with ... regulatory objectives [and are] reasonably related to the danger of recidivism." *Id.* We conclude that the effects of this statute are so reasonably related. As a result, we conclude this factor weighs against finding SORNA to be punitive.

■ The fifth *Kennedy* factor is "whether the behavior to which it applies is already a crime[.]" *Kennedy, supra.* Appellant ties his argument on this factor to that of his argument on the factor of scienter. Appellant's Brief at 21. Like the third factor, we follow the Supreme Court's lead in concluding this factor is of "little weight."

> The regulatory scheme applies only to past conduct, which was, and is, a crime. This is a necessary beginning point, for recidivism is the statutory concern. The obligations the statute imposes are the responsibility of registration, a duty not predicated upon some present or repeated violation.

*Smith, supra* at 105, 123 S.Ct. 1140 We follow the Supreme Court's rationale in concluding that while past conduct is the beginning point of the statute, this consideration is proper, because the General Assembly's concern is the high rate of recidivism. Therefore, this factor is of little weight in our analysis.

■ The sixth factor is the statute's rational connection to an alternative purpose. Appellant concedes in his brief that the statute "is rationally connected to the Commonwealth's compelling interest in seeking to prevent crimes of a sexual nature, particularly those committed against children." Appellant's Brief at 21. We agree and conclude that this factor weighs against finding the statute punitive.

■ The final *Kennedy* factor is the statute's excessiveness in relation to its regulatory purpose. In support of this factor, Appellant points out that "[n]o court or other agency is empowered to terminate an adult registrant's duties even upon offering the clearest proof of rehabilitation and lack of future dangerousness." *Id.* at 22. To the extent Appellant argues that the statute is excessive because it paints all sex offenders within its tiers with a broad brush without individualized evaluation of the danger each poses, the Supreme Court rejected such an argument in *Smith.*

In concluding the Act was excessive in relation to its regulatory purpose, the Court of Appeals relied in [ ] part on [the] proposition[ ] … that the statute applies to all convicted sex offenders without regard to their future dangerousness. …

Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high." *McKune v. Lile,* 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002); *see also id.* [536 U.S.] at 33, 122 S.Ct. 2017 ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault" (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997))).

The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against *ex post facto* challenges[,] laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. As stated in *Hawker* [*v. New York,* 170 U.S. 189, 191, 18 S.Ct. 573, 42 L.Ed. 1002 (1898)]: "Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character. But the legislature has power in cases of this kind to make a rule of universal application…." *Ibid.* The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto* Clause.

… The Act, by contrast, imposes the more minor condition of registration. In the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the

basis of accurate, nonprivate information about the registrants' convictions without violating the prohibitions of the *Ex Post Facto* Clause.

The duration of the reporting requirements is not excessive. Empirical research on child molesters, for instance, has shown that, "[c]ontrary to conventional wisdom, most reoffenses do not occur within the first several years after release," but may occur "as late as 20 years following release." National Institute of Justice, R. Prentky, R. Knight, & A. Lee, U.S. Dept. of Justice, Child Sexual Molestation: Research Issues 14 (1997).

*Smith, supra* at 103–104, 123 S.Ct. 1140

With regard to the statute in the instant case, the General Assembly made similar findings. *See* 42 Pa.C.S.A. § 9799.11(a)(4) (stating, "[s]exual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest[ ]"). As a result, we conclude that the statute is not excessive towards its non-punitive objective, which weighs against finding SORNA punitive.

▇▇ Having considered each of the seven factors, we now turn to the important task of balancing the factors.[9] As noted above, the only factor that weighs in favor of finding the statute punitive is the mandatory in-person appearances to update information even if there is no information to update. As a result, the question becomes whether this restraint is sufficient to overcome the high threshold set by the Supreme Court requiring the "clearest proof" to surmount the legislature's preferred classification of the statute as non-punitive.[10] *Smith, supra* at 92, 123 S.Ct. 1140

After considering all seven factors, as analyzed above, we conclude that the one factor weighing in favor of finding SORNA punitive does not ultimately make the statute's retroactive application unconstitutional. Although, we conclude the mandatory in-person appearance requirement imposes an affirmative constraint on Appellant, we nevertheless conclude that the restraint is relatively minor when balanced against the remaining factors. As our Supreme Court has noted in past cases, the greater restraints imposed by sex offender registration stem from the public's benefit of said registration and the consequences that

---

9. Although the seven factors are certainly not exhaustive, we have confined our discussion to them as neither the Commonwealth nor Appellant suggest that any other factors exist for the purposes of this statute.

10. Appellant cites to some of our sister states that have concluded that the *Kennedy* factors weigh in favor of finding their statutes punitive and hence their retroactivity is a violation of either the federal or state *ex post facto* clauses. *See* Appellant's Brief at 22–26. However, those states have found more factors weighing in favor of finding their respective statute punitive than we have in this case pursuant to the analysis above. *See Doe v. State*, 189 P.3d 999, 1018 (Alaska 2008) (concluding that six of the *Kennedy* factors weighed in favor of finding the statute punitive); *Wallace v. State*, 905 N.E.2d 371, 384

(Ind.2009) (concluding that six of the seven factors weighed in favor of finding the statute punitive); *State v. Letalien*, 985 A.2d 4, 24 (Me.2009) (concluding the first and second factors weighed in favor of finding the statute punitive); *Doe v. Dep't of Pub. Safety and Corr. Servs.*, 430 Md. 535, 62 A.3d 123, 139 (2013) (concluding that registration was similar to probation and dissemination of his information was the equivalent of shaming); *State v. Williams*, 129 Ohio St.3d 344, 952 N.E.2d 1108, 1113 (2011) (concluding that the Ohio Constitution's *Ex Post Facto* Clause was violated because the statute required registration and updates in person and the statute precluded judicial review of sex offender classification); *Starkey v. Dep't of Corr.*, 305 P.3d 1004, 1030 (Okla.2013) (concluding five factors favored finding the statute punitive).

flow therefrom. However, our Supreme Court has also instructed that those effects, while not insignificant, are merely secondary and collateral to the requirements themselves.

Such liberty is, of course, tempered by the reality that registrants deemed sexually violent predators may, as a consequence of public notification, be foreclosed from certain employment positions, particularly those working with children. But any such restriction is in direct furtherance of the government's compelling interest in keeping sexually violent predators away from children to the extent possible.

The conclusion that the provisions here at issue do not work an affirmative disability is buttressed by the fact that the source cases cited by [*Kennedy*] in support of this factor each involved a statute imposing a deprivation or restraint upon the individual directly, rather than through a secondary effect. Here, by contrast, any disabilities imposed upon sexually violent predators flow solely from the secondary effects of registration and notification, and thus, constitute a potential collateral restraint. Such secondary effects, therefore, do not fall within the same category as incarceration or deprivation of citizenship as they are not imposed directly by the state.

*Williams, supra* (internal citations omitted).[11]

Based on all of these considerations, we ultimately conclude that Appellant has not shown by the "clearest proof" that the effects of SORNA are sufficiently punitive to overcome the General Assembly's preferred categorization. *See Smith, supra* at 92, 123 S.Ct. 1140 Therefore, we further

conclude that the retroactive application of SORNA to Appellant does not violate the *Ex Post Facto* Clause of the Federal Constitution. *See Peugh, supra; Calder, supra.*

■ We next address Appellant's argument with regard to the Pennsylvania Constitution. Article I, Section 17 of the Pennsylvania Constitution states that "[n]o *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const. Art. I, § 17. This Court has recently held that "the standards applied to determine an *ex post facto* violation under the Pennsylvania Constitution and the United States Constitution are comparable." *Commonwealth v. Rose*, 81 A.3d 123, 127 (Pa.Super.2013) (*en banc*). Our Supreme Court has previously declined to hold that the *Ex Post Facto* Clause of the Pennsylvania Constitution imposes greater protections than Article I, Section 10 of the Federal Constitution. *See Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616, 622 (1999) (stating that Gaffney "failed to present any compelling reason for our departure from the standards appropriate for determining whether an *ex post facto* violation pursuant to the federal constitution has occurred and we find no independent reasons for doing so[ ]").

It is axiomatic that when presenting a claim for higher protections under the Pennsylvania Constitution, the Appellant must discuss the following four factors:

1) text of the Pennsylvania constitutional provision;

2) history of the provision, including Pennsylvania case-law;

3) related case-law from other states;

---

11. We recognize that *Williams* dealt with a predecessor statute, but we note that the secondary effects described above by our Supreme Court flow from registration under any statutory scheme.

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 895 (1991). The *Edmunds* analysis is mandatory and a failure to provide it precludes the consideration of a state constitutional claim independent of its federal counterpart. *See, e.g., Commonwealth v. Baker*, 621 Pa. 401, 78 A.3d 1044, 1048 (2013) (concluding that Baker's failure to provide an *Edmunds* analysis precluded considering whether Article I, Section 13 of the Pennsylvania Constitution provided higher protections that the Eighth Amendment of the Federal Constitution on cruel and unusual punishments).

Here, Appellant's brief does not include the required *Edmunds* analysis to consider whether under this specific statute, the Pennsylvania Constitution would provide higher *ex post facto* protections than Article I, Section 10 of the Federal Constitution. Instead, Appellant cites older tests that predate *Smith* for this issue. Because we have already resolved his federal *ex post facto* claim using framework promulgated by the United States Supreme Court, and Appellant does not argue that the Pennsylvania Constitution provides higher protection, his claim under the Pennsylvania Constitution likewise fails. *See Baker, supra; Edmunds, supra.*

Based on the foregoing, we conclude that the new registration regime pursuant to SORNA is constitutional under the Federal and State *Ex Post Facto* Clauses. As a result, the trial court did not err when it retroactively applied the new requirements and classification to Appellant. *See Elia, supra.* Accordingly, the trial court's July 24, 2013 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judge DONOHUE files a Concurring Opinion.

## CONCURRING OPINION BY DONOHUE, J.:

I join the Majority's determination that the appellant, Miguel A. Perez ("Perez"), has not shown by the "clearest proof," as mandated in *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), that the effects of Pennsylvania's Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10–9799.41, are sufficiently punitive to overcome the General Assembly's preferred categorization. While I concur in the decision to affirm the retroactive application of SORNA to Perez, I write to provide my analysis of the two-prong test established in *Smith.* I preface my analysis by emphasizing that I do not question the legislature's wisdom in enacting SORNA or the breadth of its provisions. Our focus is the timing of the application of its provisions. Specifically, the task before this Court is to decide whether the statute crosses the line from a permissibly retroactive non-punitive regulatory scheme, into an impermissibly punitive *ex post facto* law.

As noted by the Majority, the first step of the *Smith* test is to ascertain the legislature's subjective intent. Perez concedes that the first prong of the *Smith* test is satisfied, citing to the General Assembly's declaration of policy in Section 9799.11(b)(2), which states that the statute "shall not be construed as punitive." *See* Appellant's Brief at 9 n. 3. Thus, for the purpose of this appeal, it cannot be interpreted otherwise.

I write solely to express my concern with the concession. The Pennsylvania Supreme Court accepted, at face value, the intention stated by the legislature in the policy declarations of two previous sex offender registration statutes ("Megan's

Law I and Megan's Law II").[1] *See Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616, 619 (1999); *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 971–72 (2003) (finding a policy statement identical to the one at issue in *Gaffney* to be a sufficient basis to determine legislative intent). However, the policy declaration in SORNA is not identical to the one in Megan's Law I and II. The policy declaration for both Megan's Law I and II stated:

It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding *sexually violent predators* who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about *sexually violent predators* among public agencies and officials and to authorize the release of necessary and relevant information about *sexually violent predators* to members of the general public as a means of assuring public protection and shall not be construed as punitive.

*Williams*, 832 A.2d at 969 (emphasis added). SORNA's declaration of policy states, in pertinent part:

It is the intention of the General Assembly to substantially comply with the Adam Walsh Child Protection and Safety Act of 2006 and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of *sexual offenders*, specifically as that regulation relates to registration of *sexual offenders* and community notification about *sexual offenders*. It is the policy of the Commonwealth to require the exchange of relevant information about *sexual offenders* among public agencies and officials and to authorize the release of necessary and relevant information about *sexual offenders* to members of the general public as a means of assuring public protection and shall not be construed as punitive.

§ 9799.11(b)(1), (2) (emphasis added).

The notable difference between the two declarations is that the language in Megan's Law I and II specifically states that it is the intention of the legislature to release information on *sexually violent predators;* whereas SORNA's policy declaration intends the release of information for all *sexual offenders*.

Megan's Law I and II made a clear distinction between sexual offenders and sexually violent predators in terms of registration and notification requirements. *See* 42 Pa.C.S.A. §§ 9793–9795.5, *repealed by* 42 Pa.C.S.A. § 9799.41. The legislature determined that the high risk of recidivism for sexually violent predators warranted the stringent registration requirements and the community notification procedures. 42 Pa.C.S.A. § 9791(a)(2), *repealed by* 42 Pa.C.S.A. § 9799.41. Sexually violent predators are individuals convicted of a sexual offense that have a "mental abnormality or personality disorder," as determined by the court, which makes them "likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. In contrast, sexual offenders are simply defined as "individual[s] required to register under [SORNA]." *Id.*

Over time the registration distinctions between sexual offenders and sexually vio-

---

1. 42 Pa.C.S.A. §§ 9791–9799, *amended by* The Registration of Sexual Offenders Act of May 10, 2000, P.L. 74, No. 18, § 3; 42 Pa.C.S.A. §§ 9791–9799.9, *expired pursuant to* 42 Pa. C.S.A. § 9799.41.

lent predators have become less apparent. Individuals convicted of a Tier III offense under SORNA are subject to the same lifetime registration and quarterly in-person reporting requirements as sexually violent predators. *See* 42 Pa.C.S.A. § 9799.15(a), (e), (f). The public internet website authorized by SORNA provides an electronic notification option similar to the community notification procedure used to inform citizens when a sexually violent predator moves into their neighborhood. *See* 42 Pa.C.S.A. §§ 9799.27, 9799.28. One notable distinction between Tier III offenders and sexually violent predators in SORNA is the mandatory monthly counseling sessions sexually violent predators must attend. *See* 42 Pa.C.S.A. § 9799.36(a). Furthermore, as a Tier II offender, the registration period for Perez has more than doubled in length from 10 years to 25. 42 Pa.C.S.A. § 9799.15(a)(2); *see also* Appellant's Brief at 5. While it is true that public safety is a paramount governmental interest, the progressively rigid conditions imposed upon sexual offenders necessarily labels a broad number of people as high-risk recidivists without any means of proving otherwise.

Additionally, I hesitate to conclude that the first prong of the *Smith* test is satisfied without further inquiry because there is an absence of analysis in Pennsylvania case law as to both the placement of the registration requirements within the statute and the enforcement procedures mandated by the current and previous sex offender registration statutes. While we ordinarily defer to the legislature's stated intent, determining whether a statutory scheme is civil or criminal necessitates an analysis under general principles of statutory construction. *See Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). As the United States Supreme Court stated in *Smith*, "[o]ther formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are probative of the legislature's intent." *Smith*, 538 U.S. at 94, 123 S.Ct. 1140.

Unlike the Alaska statute at issue in *Smith*, all of SORNA's notification, registration, and procedural provisions are codified in one section of the State's "Judiciary and Judicial Procedure Code," specifically under Chapter 97, titled "Sentencing." *See* 42 Pa.C.S.A. § 9701 *et seq.* This specific chapter of the Judiciary and Judicial Procedure Code contains the mandatory minimum and maximum punitive sentences for all major crimes in Pennsylvania. *See* 42 Pa.C.S.A. §§ 9711–9720.6. Furthermore, suggested sentencing alternatives (such as probation, intermediate punishment, and fines) are likewise codified in the same chapter. *See* 42 Pa.C.S.A. §§ 9721–9730.1.

In addition to the punitive nature of the provisions surrounding SORNA in the Code, the enforcement procedures "stand in the way of asserting that the statute's intended character is clearly civil." *Smith*, 538 U.S. at 108, 123 S.Ct. 1140 (Souter, J., concurring). The legislature made it a mandatory condition that the registration and notification requirements of SORNA be explained to offenders at sentencing, and a signed acceptance of notification must be obtained if possible. 42 Pa.C.S.A. § 9799.23(a)(5). The Supreme Court stated in *Smith* that "[t]he policy to alert convicted offenders to the civil consequences of their criminal conduct does not render the consequences themselves punitive." *Smith*, 538 U.S. at 95–96, 123 S.Ct. 1140. However, the statute at issue in *Smith* set forth no procedural mandates for the implementation of the registration requirements and vested authority to promulgate regulations with the Alaska Department of Public Safety, an agency

charged with enforcement of both criminal and civil regulatory laws. *Id.* at 96, 123 S.Ct. 1140. In contrast, SORNA vests the authority to create, maintain, and enforce its registration and notification requirements in the Pennsylvania State Police, the traditional enforcer of criminal laws. *See* 42 Pa.C.S.A. §§ 9799.16(a), 9799.22, 9799.32. While I give significant weight to the legislature's declaration of policy and agree with the Majority that the intended characterization of the statute is non-punitive, I give conclusive weight to that characterization only because we have not been asked by Perez to do otherwise. Although a definitive analysis must be left to another day, I note that there is considerable evidence pointing to the opposite conclusion.

The second step in the *Smith* analysis is to determine "whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Smith*, 538 U.S. at 92, 123 S.Ct. 1140 (internal quotation marks and citations omitted). As the Majority aptly noted, the correct way to analyze whether the purpose and effect of a statute is punitive in nature is by using the seven factors established by the Supreme Court in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). These factors are "neither exhaustive nor dispositive, but are useful guideposts." *Smith*, 538 U.S. at 97, 123 S.Ct. 1140 (internal quotation marks and citations omitted).

I agree with the Majority that the first *Kennedy* factor weighs in favor of finding SORNA punitive; the statute clearly places an affirmative restraint on registrants. Similarly, I agree that factors three and five, which involve the requirement of scienter and whether the behavior to which the statute applies is already a crime, are given "little weight." Maj. Op. at 755, 756. However, it must be empha-

sized that both factors go towards finding SORNA non-punitive.

I respectfully suggest that factors two and four of the *Kennedy* test require deeper analysis than that provided by the Majority. Factor two of the test looks to whether the registration requirement has historically been regarded as punishment. Here, the Majority fails to consider how mandatory in-person reporting impacts this prong of the analysis. In *Smith*, the Supreme Court stated that the argument that Alaska's registration system was parallel to probation or supervised release "has some force." *Smith*, 538 U.S. at 101, 123 S.Ct. 1140. The Court went on to reject the comparison, largely due to the absence of any mandatory conditions imposed on convicted sex offenders by the Alaska statute. *Id.* In contrast, the mandatory in-person verification requirement in Section 9799.15(e) not only creates an affirmative restraint upon Perez, requiring him to appear at a designated facility a minimum of 50 times over the next 25 years as a Tier II offender, but also greatly resembles the periodic meetings with probation officers imposed on probationers. The Majority did not discuss the impact that these differences have on the analysis of the second factor, and instead relied on the decision in *Smith* to determine that this factor goes towards finding SORNA non-punitive. Maj. Op. at 753–55. But because SORNA differs significantly from the statute at issue in *Smith*, these disparities must be considered.

In *Commonwealth v. Williams*, the Pennsylvania Supreme Court found that probation has historically been considered a traditional form of punishment. *Williams*, 832 A.2d at 977. Probation entails a set of mandatory conditions imposed on an individual who has either been released after serving a prison sentence, or has been sentenced to probation in lieu of

prison time. 42 Pa.C.S.A. § 9754. These conditions can include psychiatric treatment, limitations on travel, and notifying a probation officer when any change of employment or residency occurs. 42 Pa. C.S.A. § 9754(c). Probationers are also subject to incarceration for a violation of any condition of their probation. 42 Pa. C.S.A. § 9771.

Like the conditions imposed on probationers, registrants under SORNA must notify the state police of a change in residency or employment. 42 Pa.C.S.A. § 9799.15(g). Offenders also face incarceration for any non-compliance with the registration requirements. 42 Pa.C.S.A. § 9799.22(a). Furthermore, SORNA requires registrants who do not have a fixed work place to provide "general travel routes and general areas where the individual works" in order to be in compliance. 42 Pa.C.S.A. § 9799.16. The Supreme Court in *Smith* stated that "[a] sex offender who fails to comply with the reporting requirement may be subjected to criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense." *Smith,* 538 U.S. at 101–02, 123 S.Ct. 1140. However, violations for noncompliance with both probation and SORNA registration requirements are procedurally parallel. Both require further factual findings to determine whether a violation has actually occurred. 42 Pa.C.S.A. §§ 9771(d), 9799.21. Similarly, but for the original underlying offense, neither would be subject to the mandatory conditions from which the potential violation stems. The parallels between the SORNA registration requirements and probation lead me to conclude that factor two of the *Kennedy* test leans towards a finding that SORNA is punitive.

The fourth *Kennedy* factor assesses whether SORNA has the effect of promoting deterrence and retribution. I agree with the Majority that the legislative findings indicate the statute has an intrinsic deterrent purpose, and that this does not immediately turn a valid regulatory scheme into a punishment. However, I find that the retributive effects of the statute extend farther than the mere increase in the length of registration.

Megan's Law I, the first sex offender registration statute enacted in Pennsylvania, required registrants to verify only their current address for a specified number of years, and did not provide for the public dissemination of that information. *See Gaffney,* 733 A.2d at 621. Subsequent versions of the statute, including Megan's Law II and SORNA, have substantially broadened not only the amount of information that must be reported, but the way that the information is distributed. *See Williams,* 832 A.2d at 967, 969; 42 Pa. C.S.A. §§ 9799.16, 9799.28.

In *Williams,* the sex offender registration statute at issue did not explicitly give the Pennsylvania State Police the means to disseminate the information on the internet. *Williams,* 832 A.2d at 980. The Pennsylvania Supreme Court found that the language of the statute authorized only "electronic transmission" to individuals who requested the information on registered sex offenders. *Id.* The Court held that the "*community notification* provisions of the statute [were] fully explainable without resort[ing] to theories of retribution and deterrence." *Id.* at 981 (emphasis added). In contrast, SORNA expressly authorizes the use of a "public internet website"[2] for the purpose of disseminating information on Pennsylvania's registered

**2.** *See* Pennsylvania State Police Megan's Law Website, http://www.pameganslaw.state.pa.us

(last visited Jun. 16, 2014).

sex offenders. 42 Pa.C.S.A. § 9799.28. A search under the "Search Offenders" tab of the official website shows registrants' photographs posted with their current address, tier assignment, and whether they were adjudicated a sexually violent predator. The use of a public internet website is far from the "community notification" by electronic transmission approved by the Pennsylvania Supreme Court in *Williams;* SORNA authorizes unfettered worldwide access to information on registered sex offenders.

The evolution of sex offender registration statutes in Pennsylvania mirrors the development of similar statutes in our neighboring state of Ohio. *See State v. Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570 (1998); *State v. Ferguson,* 120 Ohio St.3d 7, 896 N.E.2d 110 (2008); *State v. Williams,* 129 Ohio St.3d 344, 952 N.E.2d 1108 (2011). The Ohio Supreme Court recently held the latest sex offender statute punitive in purpose and effect, noting that the amendments to the statute over time made it increasingly more retributive. *See Williams,* 952 N.E.2d at 1112. Although the Ohio Supreme Court analyzed their version of SORNA under a state constitutional claim, I find its analysis of the increasingly retributive nature of the Ohio version of SORNA instructive. Like Pennsylvania's SORNA, the Ohio statute increased the length of registration under a tier system; was codified under the Ohio criminal code; contained a mandatory in-person reporting requirement; and allowed for more information to be included on the internet database for community notification. *Id.* at 1111–13. Furthermore, in discussing the accessibility of information on the internet database, the Ohio Supreme Court stated, "[t]he stigma attached to sex offenders is significant, and

the potential exists for ostracism and harassment . . . [we] do not believe that we can continue to label these proceedings as civil in nature." *Id.* at 1112.

The main purpose of SORNA, like the statute at issue in *Commonwealth v. Williams,* is to provide a mechanism for the citizens of Pennsylvania to inform themselves of potential threats in their neighborhoods. 42 Pa.C.S.A. § 9799.11(a)(8). However, providing for the limitless access to registrants' information by any individual, whether a citizen of Pennsylvania or not, lends credence to the argument that there is an alternative retributive purpose behind the reporting requirements. Widespread dissemination of registrants' information, including the make and model of their motor vehicle, "bears some resemblance to shaming punishments that were used earlier in our history to disable offenders from living normally in the community." *Smith,* 538 U.S. at 109, 123 S.Ct. 1140 (Souter, J., concurring).

In *Smith,* a majority of the United States Supreme Court rejected the argument that internet notification websites were akin to colonial shaming punishments. *Smith,* 538 U.S. at 98–99, 123 S.Ct. 1140. The Court stated that historical shaming punishments "held the person up before his fellow citizens for face-to-face shaming," and that humiliation is a collateral consequence of valid notification procedures. *Id.* The environment has changed significantly with the advancements in technology since the Supreme Court's 2003 decision in *Smith.* As of the most recent report by the United States Census Bureau, approximately 75 percent of households in the United States have internet access.[3] Yesterday's face-to-face

---

**3.** *See Computer and Internet Access in the United States: 2012, available at* https://www. census.gov/hhes/computer/publications/2012. html (last visited Jun. 11, 2014). Worldwide,

shaming punishment can now be accomplished online, and an individual's presence in cyberspace is omnipresent. The public internet website utilized by the Pennsylvania State Police broadcasts worldwide, for an extended period of time, the personal identification information of individuals who have served their "sentences." This exposes registrants to ostracism and harassment without any mechanism to prove rehabilitation—even through the clearest proof. In my opinion, the extended registration period and the worldwide dissemination of registrants' information authorized by SORNA now outweighs the public safety interest of the government so as to disallow a finding that it is merely regulatory. Thus, I conclude that the fourth *Kennedy* factor weighs in favor of finding SORNA punitive.

Factors six and seven of the *Kennedy* test are interrelated. They look to whether the statute is rationally related to an alternative purpose and if its provisions are excessive in relation to that alternative purpose. Perez virtually concedes both of these factors, stating that the statute's deterrent effect is "rationally related to the Commonwealth's compelling interest in seeking to prevent crimes of a sexual nature, particularly those committed against children." Appellant's Brief at 21. Similarly, Perez only argues that SORNA is excessive in relation to its alternative purpose due to the absence of any provision for registrants to prove rehabilitation. *Id.* at 22. The Supreme Court wholly rejected this argument in *Smith*, finding that the *ex post facto* clause "does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103,

123 S.Ct. 1140. Because factors six and seven have essentially been conceded by Perez, I agree with the Majority that these factors weigh in favor of finding SORNA non-punitive.

Recognizing that no one factor is dispositive, the final step in the two-prong *Smith* test is to balance all of the *Kennedy* factors to determine the purpose and effect of the statute. As discussed, I conclude that factors one and four support the conclusion that SORNA is punitive. The analysis under factor two of the *Kennedy* test discloses such significant parallels between the rigid SORNA in-person registration requirements and probation that, in my view, it requires a conclusion that factor two weighs in favor of finding SORNA punitive. Additionally, I agree with the Majority that factors three, five, six and seven weigh towards finding SORNA non-punitive, although factors three and five are given little consideration.

The Supreme Court has established a high threshold of the "clearest proof" to overcome the legislature's preferred classification of a statute as non-punitive. *Smith*, 538 U.S. at 92, 123 S.Ct. 1140. This, to me, is the closest of cases. Had Perez not conceded that the first prong of the *Smith* test had been met, my decision in his case may have been different. Moreover, a challenge under the Pennsylvania State Constitution may have yielded a different result. After duly weighing all of the factors, my concurrence in the Majority's decision that the retroactive application of SORNA does not violate the *ex post facto* clause of the United States Constitution is driven by the stringent presumption of constitutionality normally given to a State's law. *Smith*, 538 U.S. at 110, 123 S.Ct. 1140. In my view, given the

an estimated three billion individuals have internet access. *See* International Telecommunications Union, *The World in 2014: ICT*

*Facts and Figures, available at* http://www.itu.int/en/ITU–D/Statistics/Pages/facts/default.aspx (last visited Jun. 20, 2014).

arguments presented, this challenge to the *ex post facto* application of SORNA suggests that SORNA's constitutionality is close to, but not at, the tipping point. Thus, I respectfully concur in the Majority's decision.