J-A15033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAUSTUBH KUKDAY | |
| Appellant | No. 2403 EDA 2013 |

Appeal from the Judgment of Sentence February 21, 2013
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001527-2012

BEFORE:  PANELLA, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                **FILED DECEMBER 23, 2014**

Kaustubh Kukday appeals from the judgment of sentence imposed by the Court of Common Pleas of Monroe County on July 17, 2013, following his guilty plea to attempted statutory sexual assault.[1]  After careful review, we affirm.

The trial court set forth the facts of this case as follows:

On June 8, 2012, [Kukday], age 29 at the time, was charged with six different crimes after he used the Internet to arrange a sexual encounter with "Kim," whom he believed to be a 15-year-old girl.  [Kukday] arranged a meeting with "Kim" and arrived at the prearranged location at the set time.  "Kim" was, in fact, the undercover Internet alias of detective Brian Webbe of the Monroe County Office of the District Attorney.  On December 6, 2012, [Kukday] pled guilty to one count of attempted statutory sexual assault.  On February 21, 2013, [Kukday], a resident alien married to a U.S. citizen, was sentenced to a period of

_____

[1] 18 Pa.C.S. § 3122.1

incarceration for not less than two hundred fifty-eight days to no more than twenty-three months. He was also directed to undergo a sexual offenders evaluation, and he was classified as a Tier III offender subject to the lifetime registration and reporting requirements under Pennsylvania's Registration of Sexual Offenders Law, 42 Pa.C.S. §[§] 9799.10 [- 9799.41] (hereinafter "Megan's Law IV").

Trial Court Opinion, 7/17/13, at 1-2.

Megan's Law IV was created by Act 111 of 2011, which was adopted on December 20, 2011, and later amended by Act 91 of 2012. Megan's Law IV became effective on December 20, 2012, and, *inter alia*, required registration for additional offenses including statutory sexual assault; revised the penalties for failure to comply with registration requirements; imposed more frequent registration, reporting, notification and compliance requirements; and provided that Megan's Law IV would apply retroactively.

On March 4, 2013, Kukday moved for modification of sentence contending that the court should not have applied the registration and reporting requirements of Megan's Law IV that became effective fourteen days after he entered his guilty plea. Rather, Kukday contended that the court should have applied the requirements in place at the time of his guilty plea, which did not include registration or reporting for individuals convicted of attempted statutory sexual assault.

On March 22, 2013, the court heard arguments from three defendants, including Kukday, challenging Megan's Law IV. By order dated July 2, 2013, the court denied Kukday's motion, and on July 17, 2013, issued an opinion in support of the order. On August 9, 2013, Kukday filed a motion to file a

notice of appeal *nunc pro tunc*, which the trial court granted on August 14, 2013. Kukday filed a notice of appeal *nunc pro tunc* on August 20, 2013, and filed his Pa.R.A.P. 1925(b) statement of errors complained of on appeal on September 9, 2013. In lieu of filing a separate Rule 1925(a) opinion, the trial court submitted its July 17, 2013 opinion in support of denial of Kukday's post-sentence motions.

Kukday raises the following issue for our review:

Whether the retroactive application of the sexual offender law to [Kukday] violates the constitutional prohibitions against *ex post facto* laws.

Appellant's Brief, at 4.

In **Commonwealth v. Williams**, 832 A.2d 962 (Pa. 2003), our Supreme Court noted that the proper framework for analyzing whether legislation is unconstitutionally punitive is the United States Supreme Court's "traditional two-pronged test [**see Smith v. Doe I**, 538 U.S. 84 (2003)], in which the Court first inquires whether the legislature's intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent." **Williams**, 832 A.2d at 972.

With respect to whether the intent of the legislature was punitive, we look to the statute itself, which provides in relevant part:

(b) Declaration of policy. – The General Assembly declares as follows:

(1) It is the intention of the General Assembly to substantially comply with the Adam Walsh Child Protection and Safety Act of

- 3 -

2006 and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to registration of sexual offenders and community notification about sexual offenders.

(2) It is the policy of the Commonwealth to require the exchange of relevant information about sexual offenders among public agencies and officials and to authorize the release of necessary and relevant information about sexual offenders to members of the general public as a means of assuring public protection and shall not be considered as punitive.

42 Pa.C.S. § 9799.11(b)(2).

It is clear that the plain language of section 9799.11(b)(2) expresses a legislative intent to protect the public, rather than to punish offenders.

Where, as here, the Legislature's express intent was to provide a civil remedial mechanism, courts will consider whether the remedy "provide[s] for sanctions so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty." *United States v. Ward*, 448 U.S. 242, 249 (1980). In reaching this determination, courts employ the following seven-factor test:

(1) [W]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected as assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Commonwealth v. Lee*, 935 A.2d 865, 873-74 (Pa. 2007) (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)).

In **Commonwealth v. Perez**, 97 A.3d 747 (Pa. Super. 2014), this Court addressed a similar challenge to the constitutionality of Megan's Law IV. Perez committed indecent assault at a time when the version of Megan's Law in effect required an individual convicted of that offense to register as a sex offender for 10 years. However, under Megan's Law IV, which went into effect after the commission of the offense, but before Perez pled *nolo contendere* to indecent assault, the registration period increased to 25 years. Accordingly, the trial court ordered Perez to register as a sex offender for 25 years.

Perez filed an appeal to this Court, which determined that the Legislature did not intend Megan's Law IV to be punitive. Applying the **Mendoza-Martinez** factors, the Court then considered whether the sanctions were actually a criminal penalty.

With respect to the first factor, this Court held that requiring Perez to appear in person 50 times over the next 25 years to verify personal information was an affirmative restraint that weighed in favor of finding Megan's Law IV punitive. **Perez**, **supra** at 752-54.[2] However, it concluded that the remaining **Mendoza-Martinez** factors weighed against such a finding. Specifically, it held that registration requirements are not

_____

[2] As a Tier III offender, Kukday is subject to the stricter requirements of appearing "in person at an approved registration site quarterly." 42 Pa.C.S. § 9799.25(a)(3).

historically regarded as punishment, *id.* at 754; Megan's Law IV does not come into play only on a finding of scienter, *id.* at 754-55; Megan's Law IV has some aspects of retribution, but they are reasonably related to the regulatory objective of reducing recidivism, *id.* at 755-56; the statute's consideration of past conduct is proper because of the concern about recidivism, *id.* at 756-57; Megan's Law IV is rationally connected to the Commonwealth's compelling interest in preventing crimes of a sexual nature, *id.* at 757; and the registration requirements are not excessive in light of the importance of protecting the public from sexual offenders, *id.* at 757-58.

The **Perez** Court further explained:

After considering all seven factors, as analyzed above, we conclude that one factor weighing in favor of finding [Megan's Law IV] punitive does not ultimately make the statute's retroactive application unconstitutional. Although, we conclude the mandatory in-person appearance requirement imposes an affirmative constraint on Appellant, we nevertheless conclude that the restraint is relatively minor when balanced against the remaining factors.

**Id.** at 758.

Accordingly, **Perez** held that Megan's Law IV is "constitutional under the Federal and State *Ex Post Facto* clauses." **Id.** at 760. In light of **Perez**, we conclude that the trial court did not err or abuse its discretion by requiring Kukday to conform to the requirements of Megan's Law IV, which became effective fourteen days after he pled guilty to attempted statutory sexual assault.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2014