**[J-103A-2019 and J-103B-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 35 MAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Montgomery County Court of |
| | : | Common Pleas, Criminal Division, |
| v. | : | at No. CP-46-CR-1445-1997. dated |
| | : | June 21, 2018 |
| | : | |
| CLAUDE LACOMBE, | : | ARGUED: November 20, 2019 |
| | : | |
| Appellee | : | |
| | | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 64 MAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of |
| | : | Montgomery County Court of |
| | : | Common Pleas, Criminal Division, |
| v. | : | at No. CP-46-CR-0004935-2013 |
| | : | dated October 26, 2018. |
| | : | |
| MICHAEL WITMAYER, | : | ARGUED: November 20, 2019 |
| | : | |
| Appellee | : | |

**OPINION**

**JUSTICE DOUGHERTY**[1]                    **DECIDED: July 21, 2020**

In these consolidated appeals, the Commonwealth challenges orders of the
Montgomery County Court of Common Pleas relieving appellees, Claude Lacombe and
Michael Witmayer, of their duty to comply with Subchapter I of the Sex Offender
Registration and Notification Act (SORNA), 42 Pa.C.S. §§9799.51-9799.75, based upon

---

[1] The matter was reassigned to this author.

the court's finding Subchapter I, as retroactively applied to appellees, is a punitive and unconstitutional *ex post facto* law.[2]  For the reasons set forth below, we now hold this was error, Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws.

## I. Procedural History of the Present Appeals

## A. Claude Lacombe

In 1997, Lacombe was convicted of involuntary deviate sexual intercourse (IDSI), sexual assault, indecent assault, official oppression, and unsworn falsification to authorities and sentenced to a term of six to twenty years' imprisonment.  Lacombe was not found to be a sexually violent predator (SVP), but was required to comply with the then-applicable version of Megan's Law for a period of ten years upon his release from prison due to his IDSI conviction; Lacombe was released from prison in April of 2005 and his period of registration would have ended in April of 2015.  In the meantime, however, the General Assembly enacted the first version of SORNA, under which Lacombe was designated as a Tier III offender and required to comply with the mandates of the statute for the remainder of his life.

---

[2] The prohibition of *ex post facto* laws appears in the United States Constitution in Article I, Section 9, which is a limitation on Congress' authority to pass laws, and in Article I, Section 10, which is a limitation on the power of the states.  Article I, Section 9 provides: "No Bill of Attainder or ex post facto Law shall be passed."  U.S. CONST. art. I, §9.  Article I, Section 10 similarly provides:  "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." U.S. CONST. art. I, §10.

Pennsylvania's *ex post facto* provision is found in Article I, Section 17 of our Constitution, which states that:  "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." PA. CONST. art I, §17.

Lacombe did not challenge the corresponding changes to his reporting obligations until February 20, 2018, after we decided *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (plurality) (SORNA requirements have punitive effect pursuant to *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963),[3] and retroactive application thus constitutes *ex post facto* violation).  Relying upon that decision, Lacombe filed in common pleas court a petition to terminate his sexual offender registration requirements.  On June 1, 2018, the Commonwealth replied to Lacombe's petition, countering Lacombe's reliance upon *Muniz*, and noting *Muniz* addressed a former version of SORNA.  By that point, the General Assembly had enacted Subchapter I, which is markedly different from the version of SORNA invalidated in *Muniz*.  In response, Lacombe, still relying upon *Muniz*, maintained Subchapter I also is punitive and constitutionally infirm.  On June 21, 2018, following oral argument, the court granted Lacombe's petition, finding Subchapter I to be a punitive and unconstitutional *ex post facto* law, and relieved him of any duty to comply with Subchapter I.

The Commonwealth filed a motion for reconsideration, wherein it maintained its position that Subchapter I is not punitive.  The Commonwealth also argued for the first time that, if Subchapter I is punitive, then any challenge thereto had to be raised in a timely petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-46.  Because Lacombe's challenge to Subchapter I was facially untimely for purposes of the

---

[3] In *Mendoza-Martinez*, the United States Supreme Court listed the following seven factors as a framework for determining whether a statutory sanction is so punitive as to negate a legislature's expressed intention to identify the scheme as civil or regulatory: "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment— retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]" 372 U.S. at 168-69 (footnotes omitted).

PCRA, according to the Commonwealth, the court lacked jurisdiction to afford any relief. The court denied the petition for reconsideration, and the Commonwealth appealed the order directly to this Court. *See* 42 Pa.C.S. §722(7) ("The Supreme Court shall have exclusive jurisdiction of appeals from final orders . . . [in m]atters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.").

### B. Michael Witmayer

In 2014, Witmayer was convicted of IDSI with a child who is less than sixteen years of age, indecent assault of a child who is less than sixteen years of age, corruption of the morals of a minor, and endangering the welfare of children due to a pattern of sexual abuse which occurred between January of 2006 and December of 2012.

Before sentencing, the trial court held an SVP hearing, after which the court determined that the Commonwealth had failed to demonstrate Witmayer met the criteria to be deemed an SVP. Nonetheless, because the IDSI conviction constituted a Tier III offense under the original version of SORNA, the trial court informed Witmayer that he was obliged to register as a sexual offender and comply with SORNA's terms and conditions for the remainder of his life. The trial court then sentenced Witmayer to five and one-half to twenty years in prison. Witmayer appealed, the Superior Court affirmed his judgment of sentence, *see Commonwealth v. Witmayer*, 144 A.3d 939 (Pa. Super. 2016), and this Court denied review. *See Commonwealth v. Witmayer*, 169 A.3d 27 (Pa. 2017) (*per curiam*).

On January 17, 2018, Witmayer filed a timely, *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition. Therein, Witmayer contended

that, because his offenses were completed before SORNA took effect, retroactive application of SORNA constituted an *ex post facto* violation, an argument based on *Muniz*. As it did in Lacombe's post-conviction proceedings, the Commonwealth alerted the PCRA court to the fact that, before Witmayer filed his amended petition, Subchapter I had been enacted and taken effect, replacing SORNA as the governing statutory scheme with which Witmayer had to comply. Thus, the Commonwealth posited, the constitutional deficiencies identified in *Muniz* effectively were remedied, and any claim relying upon *Muniz* was moot. The PCRA court directed Witmayer to file a response to the Commonwealth's position.

On September 20, 2018, Witmayer filed a second amended PCRA petition. In that filing, Witmayer highlighted the fact that none of the conduct for which he was convicted occurred after December 20, 2012, the date that determines whether Subchapter H or Subchapter I applies.[4] Because his conduct occurred before that date, Whitmayer argued if the new scheme of Subchapter I applied to him, it had to apply retroactively. Witmayer maintained that, because the changes to SORNA effectuated by Subchapter I were minor, the scheme remained punitive in nature, and its retroactive

---

[4] To address this Court's decision in *Muniz* and the Superior Court's decision in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017) (invalidating SORNA's mechanism for determining SVP status, *see* 42 Pa.C.S. §9799.51(b)(4)) (*reversed by Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020)), the General Assembly divided SORNA into two subchapters. Subchapter H is based on the original SORNA statute and is applicable to offenders who committed their offenses after the December 20, 2012 effective date of SORNA, 42 Pa.C.S. §9799.11(c); Subchapter I is applicable to offenders, like appellees, who committed their offenses between April 22, 1996 and the effective date of SORNA. Subchapter H is not at issue in this case. We considered a challenge to the constitutionality of Subchapter H in *Commonwealth v. Torsilieri*, ___ A.3d ____, 2020 WL 3241625 (Pa. filed June 16, 2020). However, we remanded to the trial court for further development of the record and a determination on Torsilieri's claim that there is now a consensus that calls into question the General Assembly's finding that sexual offenders pose a high risk of re-offense. *Id.* at *22; *see also* 42 Pa.C.S. §9799.11(a)(4).

application necessarily constituted an *ex post facto* violation. The PCRA court, which had already ruled Subchapter I is punitive and unconstitutional during Lacombe's proceedings, held a hearing and subsequently granted Witmayer's PCRA petition. The Commonwealth appealed directly to this Court. *See* 42 Pa.C.S. §722(7).

### C. Summary of the Arguments and Applicable Standards of Review

Briefly, the parties dispute whether Subchapter I is punitive and its retroactive application to Lacombe and Witmayer is thus unconstitutional under an *ex post facto* analysis, notwithstanding the significant differences between Subchapter I and the original SORNA statute at issue in *Muniz*. In the case of Lacombe, the parties also dispute whether the PCRA is the sole avenue for challenging sexual offender statutes and, if so, whether Lacombe was required to establish an exception to the PCRA's timeliness requirements.[5] As we consider the parties' arguments in greater detail below,[6] "we recognize there is a general presumption that all lawfully enacted statutes are constitutional. In addition, as this case presents questions of law, our scope of review is plenary and we review the lower courts' legal determinations *de novo*." *Muniz*, 164 A.3d at 1195 (internal citation omitted).

---

[5] Witmayer additionally claims Subchapter I violates: 1) the separation of powers doctrine by unconstitutionally usurping judicial sentencing authority; 2) due process pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013); and 3) double jeopardy protections. We do not address these claims, however, because they were not addressed by the common pleas court in the first instance and are thus not properly before us, and, in any event, the Commonwealth, as appellant, has appealed only from the determination Subchapter I is unconstitutional as an *ex post facto* law. *See* Commonwealth's Brief at 1. Each of these claims, however, is predicated upon Witmayer's argument that Subchapter I is punitive and, given our ultimate holding that Subchapter I is nonpunitive, the claims would fail in any event.

[6] This Court also received argument briefs from the Office of the Attorney General (OAG) as intervenor, and *amici curiae* Pennsylvania District Attorneys Association, the Pennsylvania Office of the Victim Advocate, the Pennsylvania Coalition Against Rape, Crimewatch Technologies, Inc., in support of the Commonwealth, and the Pennsylvania Association for Rational Sexual Offense Laws in support of appellees.

## II. Relevant Legal History

As we consider the constitutional validity of Subchapter I, we first review the original SORNA statute, the *Muniz* decision, and the new requirements of Subchapter I.

### A. Original SORNA Statute

We provided a detailed description of the original SORNA statute in *Muniz* and we reproduce that description here:

> The General Assembly enacted SORNA in response to the federal Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, 42 U.S.C. §§16901-16991, which mandates that states impose on sex offenders certain tier-based registration and notification requirements in order to avoid being subject to a penalty, *i.e.*, the loss of federal grant funding. *In re J.B.*, 107 A.3d 1, 3 (Pa. 2014). Accordingly, Pennsylvania's General Assembly sought to comply with this federal legislation by providing for "the expiration of prior registration requirements, commonly referred to as Megan's Law [III], 42 Pa.C.S. §§9791-9799.9, as of December 20, 2012, and for the effectiveness of SORNA on the same date." *Id.*
>
> The purposes of SORNA, as stated by the General Assembly, are as follows:
>
> > (1) To bring the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006 . . .
> >
> > (2) To require individuals convicted or adjudicated delinquent of certain sexual offenses to register with the Pennsylvania State Police and to otherwise comply with this subchapter if those individuals reside within this Commonwealth, intend to reside within this Commonwealth, attend an educational institution inside this Commonwealth or are employed or conduct volunteer work within this Commonwealth.
> >
> > (3) To require individuals convicted or adjudicated delinquent of certain sexual offenses who fail to maintain a residence and are therefore homeless but can still be found within the borders of this Commonwealth to register with the Pennsylvania State Police.

(4) To require individuals who are currently subject to the criminal justice system of this Commonwealth as inmates, supervised with respect to probation or parole or registrants under this subchapter to register with the Pennsylvania State Police and to otherwise comply with this subchapter. To the extent practicable and consistent with the requirements of the Adam Walsh Child Protection and Safety Act of 2006, this subchapter shall be construed to maintain existing procedures regarding registration of sexual offenders who are subject to the criminal justice system of this Commonwealth.

(5) To provide a mechanism for members of the general public to obtain information about certain sexual offenders from a public Internet website and to include on that Internet website a feature which will allow a member of the public to enter a zip code or geographic radius and determine whether a sexual offender resides within that zip code or radius.

(6) To provide a mechanism for law enforcement entities within this Commonwealth to obtain information about certain sexual offenders and to allow law enforcement entities outside this Commonwealth, including those within the Federal Government, to obtain current information about certain sexual offenders.

42 Pa.C.S. §9799.10. Furthermore, the General Assembly expressed the legislative findings and declaration of policy supporting SORNA as follows:

**(a) Legislative findings.—** The General Assembly finds as follows:

(1) In 1995 the General Assembly enacted the act of October 24, 1995 (1st Sp. Sess. P.L. 1079, No. 24), commonly referred to as Megan's Law. Through this enactment, the General Assembly intended to comply with legislation enacted by Congress requiring that states provide for the registration of sexual offenders. The Federal statute, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (Public Law 103-322, 42 U.S.C. 14071 *et seq.*), has been superseded by the Adam

Walsh Child Protection and Safety Act of 2006 (Public Law 190-248, 120 Stat. 587).

(2) This Commonwealth's laws regarding registration of sexual offenders need to be strengthened. The Adam Walsh Child Protection and Safety Act of 2006 provides a mechanism for the Commonwealth to increase its regulation of sexual offenders in a manner which is nonpunitive but offers an increased measure of protection to the citizens of this Commonwealth.

(3) If the public is provided adequate notice and information about sexual offenders, the community can develop constructive plans to prepare for the presence of sexual offenders in the community. This allows communities to meet with law enforcement to prepare and obtain information about the rights and responsibilities of the community and to provide education and counseling to residents, particularly children.

(4) Sexual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest.

(5) Sexual offenders have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government.

(6) Release of information about sexual offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.

(7) Knowledge of whether a person is a sexual offender could be a significant factor in protecting oneself and one's family members, or those in care of a group or community organization, from recidivist acts by such offenders.

(8) The technology afforded by the Internet and other modern electronic communication methods makes this information readily accessible to parents, minors, and private entities,

enabling them to undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk.

**(b) Declaration of policy.—** The General Assembly declares as follows:

(1) It is the intention of the General Assembly to substantially comply with the Adam Walsh Child Protection and Safety Act of 2006 and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to registration of sexual offenders and community notification about sexual offenders.

(2) It is the policy of the Commonwealth to require the exchange of relevant information about sexual offenders among public agencies and officials and to authorize the release of necessary and relevant information about sexual offenders to members of the general public as a means of assuring public protection and shall not be construed as punitive.

(3) It is the intention of the General Assembly to address the Pennsylvania Supreme Court's decision in *Commonwealth v. Neiman*, [84 A.3d 603] (Pa. 2013), by amending this subchapter in the act of March 14, 2014 (P.L. 41, No. 19).

42 Pa.C.S. §9799.11(a)-(b).

SORNA's registration provisions are applicable to, *inter alia*, the following individuals: (1) those convicted of a sexually violent offense, on or after the effective date of SORNA, who are residents of Pennsylvania, employed in Pennsylvania, students in Pennsylvania or transients; (2) those who are inmates, on or after the effective date of SORNA, in state or county prisons as a result of a conviction for a sexually violent offense; (3) those who, on or after the effective date of SORNA, are inmates in a federal prison or are supervised by federal probation authorities as a result of a sexually violent offense and have a residence in Pennsylvania, are employed in Pennsylvania, are students in Pennsylvania or transients; and, pertinent to this appeal, (4) those who were required to register under previous versions of Megan's Law and had not yet fulfilled their registration period as of the effective date of SORNA. 42 Pa.C.S. §9799.13.

SORNA classifies offenders and their offenses into three tiers. 42 Pa.C.S. §9799.14. Those convicted of Tier I offenses are subject to registration for a period of fifteen years and are required to verify their registration information and be photographed, in person at an approved registration site, annually. 42 Pa.C.S. §9799.15(a)(1), (e)(1).[16] Those convicted of Tier II offenses are subject to registration for a period of twenty-five years and are required to verify their registration information and be photographed, in person at an approved registration site, semi-annually. 42 Pa.C.S. §9799.15(a)(2), (e)(2).[17]

_____

[16] The Tier I offenses enumerated in SORNA are as follows: 18 Pa.C.S. §2902(b) (relating to unlawful restraint); 18 Pa.C.S. §2903(b) (relating to false imprisonment); 18 Pa.C.S. §2904 (relating to interference with custody of children); 18 Pa.C.S. §2910 (relating to luring a child into a motor vehicle or structure); 18 Pa.C.S. §3124.2(a) (relating to institutional sexual assault); 18 Pa.C.S. §3126(a)(1) (relating to indecent assault); 18 Pa.C.S. §6301(a)(1)(ii) (relating to corruption of minors); 18 Pa.C.S. §6312(d) (relating to sexual abuse of children); 18 Pa.C.S. §7507.1 (relating to invasion of privacy); 18 U.S.C. §1801 (relating to video voyeurism); 18 U.S.C. §2252(a)(4) (relating to certain activities relating to material involving the sexual exploitation of minors); 18 U.S.C. §2252A (relating to certain activities relating to material constituting or containing child pornography); 18 U.S.C. §2252B (relating to misleading domain names on the internet); 18 U.S.C. §2252C (relating to misleading words or digital images on the internet); 18 U.S.C. §2422(a) (relating to coercion and enticement); 18 U.S.C. §2423(b) (relating to transportation of minors); 18 U.S.C. §2423(c) (relating to engaging in illicit sexual conduct in foreign places); 18 U.S.C. §2424 (relating to filing factual statement about alien individual); 18 U.S.C. §2425 (relating to use of interstate facilities to transmit information about a minor); a comparable military offense or similar offense under the laws of another jurisdiction or foreign country or under a former law of this Commonwealth; an attempt, conspiracy or solicitation to commit any of the above offenses; and a conviction for a sexual offense in another jurisdiction or foreign country that is not set forth in this section, but nevertheless requires registration under a sexual offender

statute in the jurisdiction or foreign country. 42 Pa.C.S. §9799.14(b).

[17] The Tier II offenses enumerated in SORNA are as follows: 18 Pa.C.S. §3011(b) (relating to trafficking in individuals); 18 Pa.C.S. §3122.1(a)(2) (relating to statutory sexual assault); 18 Pa.C.S. §3124.2(a.2) and (a.3) (relating to institutional sexual assault in schools or child care centers); 18 Pa.C.S. §3126(a)(2), (3), (4), (5), (6) or (8) (relating to indecent assault when victim is over 13 years of age); 18 Pa.C.S. §5902(b.1) (relating to prostitution and related offenses); 18 Pa.C.S. §5903(a)(3)(ii), (4)(ii), (5)(ii) or (6) (relating to obscene and other sexual materials and performances); 18 Pa.C.S. §6312(b) and (c); 18 Pa.C.S. §6318 (relating to unlawful contact with minor); 18 Pa.C.S. §6320 (relating to sexual exploitation of children); 18 U.S.C. §1591 (relating to sex trafficking of children by force, fraud or coercion); 18 U.S.C. §2243 (relating to sexual abuse of a minor or ward); 18 U.S.C. §2244 (relating to abusive sexual conduct) where the victim is 13 years of age or older but under 18 years of age; 18 U.S.C. §2251 (relating to sexual exploitation of children); 18 U.S.C. §2251A (relating to selling or buying children); 18 U.S.C. §2252(a)(1), (2) or (3); 18 U.S.C. §2260 (relating to production of sexually explicit depictions of a minor for importation into the United States); 18 U.S.C. §2421 (relating to transportation generally); 18 U.S.C. §2422(b); 18 U.S.C. §2423(a); a comparable military offense or similar offense under the laws of another jurisdiction or foreign country or under a former law of this Commonwealth; and an attempt, conspiracy or solicitation to commit any of the above offenses. 42 Pa.C.S. §9799.14(c).

Those convicted of Tier III offenses are subject to lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly. 42 Pa.C.S. §9799.15(a)(3), (e)(3). The Tier III offenses enumerated in SORNA— including the crime of which appellant was convicted, indecent assault where the individual is less than thirteen years of age—are as follows:

(1) 18 Pa.C.S. §2901(a.1) (relating to kidnapping).

(2) 18 Pa.C.S. §3121 (relating to rape).

(3) 18 Pa.C.S. §3122.1(b) (relating to statutory sexual assault).

(4) 18 Pa.C.S. §3123 (relating to involuntary deviate sexual intercourse).

(5) 18 Pa.C.S. §3124.1 (relating to sexual assault).

(6) 18 Pa.C.S. §3124.2(a.1) [relating to institutional sexual assault].

(7) 18 Pa.C.S. §3125 (relating to aggravated indecent assault).

(8) 18 Pa.C.S. §3126(a)(7) (relating to indecent assault [of victim under 13 years of age]).

(9) 18 Pa.C.S. §4302(b) (relating to incest).

(10) 18 U.S.C. §2241 (relating to aggravated sexual abuse).

(11) 18 U.S.C. §2242 (relating to sexual abuse).

(12) 18 U.S.C. §2244 [abusive sexual contact] where the victim is under 13 years of age.

(13) A comparable military offense or similar offense under the laws of another jurisdiction or foreign country or under a former law of this Commonwealth.

(14) An attempt, conspiracy or solicitation to commit an offense listed in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12) or (13).

(15) (Reserved).

(16) Two or more convictions of offenses listed as Tier I or Tier II sexual offenses.

42 Pa.C.S. §9799.14(d).

SORNA also establishes a statewide registry of sexual offenders to be created and maintained by the state police. 42 Pa.C.S. §9799.16(a). The registry contains information provided by the sexual offender, including: names and aliases, designations used by the offender for purposes of

routing or self-identification in internet communications, telephone numbers, social security number, addresses, temporary habitat if a transient, temporary lodging information, passport and documents establishing immigration status, employment information, occupational and professional licensing information, student enrollment information, motor vehicle information, and date of birth. 42 Pa.C.S. §9799.16(b). The registry also contains information from the state police, including the following: physical description of the offender, including a general physical description, tattoos, scars and other identifying marks, text of the statute defining the offense for which the offender is registered, criminal history information, current photograph, fingerprints, palm prints and a DNA sample from the offender, and a photocopy of the offender's driver's license or identification card. 42 Pa.C.S. §9799.16(c).

Not only does SORNA establish a registry of sexual offenders, but it also directs the state police to make information available to the public through the internet. 42 Pa.C.S. §9799.28. The resulting website "[c]ontains a feature to permit a member of the public to obtain relevant information for an [offender] by a query of the internet website based on search criteria including searches for any given zip code or geographic radius set by the user." 42 Pa.C.S. §9799.28(a)(1)(i). The website also "[c]ontains a feature to allow a member of the public to receive electronic notification when [an offender] provides [updated] information [and also allows] a member of the public to receive electronic notification when [an offender] moves into or out of a geographic area chosen by the user." 42 Pa.C.S. §9799.28(a)(1)(ii). The Pennsylvania website must coordinate with the Dru Sjodin National Sex Offender Public Internet Website (https://www.nsopw.gov) and must be updated within three business days of receipt of required information. 42 Pa.C.S. §9799.28(a)(1)(iii), (iv).

In addition to the offender's duty to appear at an approved registration site annually, semi-annually, or quarterly, depending upon the tier of their offense, all offenders are also required to appear in person at an approved registration site within three business days of any changes to their registration information including a change of name, residence, employment, student status, telephone number, ownership of a motor vehicle, temporary lodging, e-mail address, and information related to professional licensing. 42 Pa.C.S. §9799.15(g). Offenders must also appear in person at an approved registration site within twenty-one days in advance of traveling outside the United States and must provide dates of travel, destinations, and temporary lodging. 42 Pa.C.S. §9799.15(i). Furthermore, transients, *i.e.* homeless individuals, must appear in person monthly until a residence is established. 42 Pa.C.S. §9799.15(h)(1).

Offenders who fail to register, verify their information at the appropriate time, or provide accurate information are subject to prosecution and incarceration under 18 Pa.C.S. §4915.1 (failure to comply with registration requirements). 42 Pa.C.S. §9799.21(a).

*Muniz*, 164 A.3d at 1203-08 (additional internal footnotes omitted).

### B. *Muniz*

In *Muniz*, we considered a constitutional challenge to the retroactive application of SORNA to those offenders who committed their offenses prior to its effective date of December 20, 2012. We began by examining the history of the *ex post facto* clause, *see Muniz*, 164 A.3d at 1195-96, and explained that SORNA's retroactive application could only result in an *ex post facto* violation if the statute constituted criminal punishment. Accordingly, we applied a two-part test, first determining whether the expressed statutory purpose is to impose punishment, and if not, whether the statutory scheme is so punitive in effect as to negate the legislature's stated non-punitive intent. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). We also reviewed the decisions in *Smith v. Doe*, 538 U.S. 84 (2003),[7] and *Commonwealth v. Williams*, 832 A.2d 962 (Pa. 2003) (*Williams II*),[8] which applied this same framework.

We recently summarized the *Muniz* Court's analysis regarding the punitive nature of SORNA in *Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020) (*Butler II*):

In *Muniz*, we . . . first determined "the General Assembly's intent in enacting SORNA apparently was twofold: to comply with federal law; and . . . 'not to punish, but to promote public safety through a civil, regulatory scheme.'" *Id.* at 1209-10, *quoting Williams II*, 832 A.2d at 972.

---

[7] In *Smith*, the United States Supreme Court upheld an Alaska sex offender registration statute, finding it was nonpunitive following an analysis of the *Mendoza-Martinez* factors. 538 U.S. at 105-06.

[8] Relevant here, the *Williams II* Court found the registration, notification, and counseling requirements imposed upon SVPs pursuant to Megan's Law II were nonpunitive. 832 A.2d at 984.

Moreover, in *Muniz*, we considered the *Mendoza-Martinez* factors and found SORNA imposed an affirmative disability or restraint upon offenders due to the onerous in-person reporting requirements for both verification and changes to an offender's registration. *Id.* at 1211. . . . We also determined in *Muniz* that SORNA's requirements were analogous to historical forms of punishment, specifically holding the statute's "publication provisions — when viewed in the context of our current internet-based world — to be comparable to shaming punishments" and the mandatory conditions placed on registrants to be akin to probation. *Id.* at 1213.

The Muniz Court next determined the fact SORNA comes into play only upon a finding of scienter was of little significance to our inquiry because "past criminal conduct is 'a necessary beginning point'" for statutes that are intended to protect the public. *Id.* at 1214, *quoting Smith*, 538 U.S. at 105. We further held in *Muniz* that SORNA promotes the traditional aims of punishment as "the prospect of being labeled a sex offender accompanied by registration requirements and the public dissemination of an offender's personal information over the internet has a deterrent effect." *Id.* at 1215. In so holding, we distinguished *Williams II*, stating there was a clear deterrent effect since, "[c]ontrary to Megan's Law II, as analyzed in *Williams II*, there is not a 'substantial period of incarceration attached to' many of the predicate offenses requiring registration under SORNA, many of which are misdemeanors or carry relatively short maximum terms of incarceration." *Id.*, *quoting Williams II*, 832 A.2d at 978 (internal footnotes omitted). *Muniz* also stated the General Assembly increased the retributive effect of SORNA as compared to Megan's Law II by "increas[ing] the length of registration, [adding] mandatory in-person reporting requirements, and allow[ing] for more private information to be displayed online." *Id.* at 1216 (citation omitted). We also determined in *Muniz* that whether or not the behavior to which SORNA applies is already a crime carries little weight, stating "where SORNA is aimed at protecting the public against recidivism, past criminal conduct is 'a necessary beginning point.'" *Id.*, *quoting Smith*, 538 U.S. at 105.

Although recognizing "there are studies which find the majority of sexual offenders will not re-offend, and that sex offender registration laws are ineffective in preventing re-offense[,]" we deferred in *Muniz* to the General Assembly's policy determination and concluded the protection of the public from sex offenders "is a purpose other than punishment to which the statute may be rationally connected and this factor weighs in favor of finding SORNA to be nonpunitive." *Id.* at 1217. Lastly, we determined SORNA's registration requirements were excessive and over-inclusive in relation to the statute's intended purpose of protecting the public; it "categorize[d] a

broad range of individuals as sex offenders subject to its provisions, including those convicted of offenses that do not specifically relate to a sexual act." *Id.* at 1218. Accordingly, we held in *Muniz* that SORNA's registration requirements constituted punishment and their retroactive application constituted a violation of the constitutional prohibition against *ex post facto* laws. *Id.*

*Butler II*, 226 A.3d at 980-81.

## C. Subchapter I

In response to *Muniz* and the Superior Court's decision in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017) (*Butler I*) (invalidating SORNA's mechanism for determining SVP status, *see* 42 Pa.C.S. §9799.51(b)(4)), *rev'd* 226 A.3d 972 (Pa. 2020), the General Assembly enacted Subchapter I, the retroactive application of which became the operative version of SORNA for those sexual offenders whose crimes occurred between April 22, 1996 and December 20, 2012. In this new statutory scheme, the General Assembly, *inter alia*, eliminated a number of crimes that previously triggered application of SORNA and reduced the frequency with which an offender must report in person to the Pennsylvania State Police (PSP). With regard to Subchapter I, the General Assembly declared its intent that the statute "shall not be considered as punitive." 42 Pa.C.S. §9799.51(b)(2).

To achieve its dual goals of ensuring public safety without creating another unconstitutionally punitive scheme, the General Assembly made a number of material changes to the operation of SORNA. The provisions of Subchapter I most relevant to our present analysis follow:

- Subchapter I applies to those convicted of a sexually violent offense after April 22, 1996, but before December 20, 2012. 42 Pa.C.S. §9799.52(1), (2).

- Those convicted of one of the triggering offenses must register either for a period of ten years or for life. 42 Pa.C.S. §9799.55(a), (b). Those offenders designated as SVPs must register for life. *Id.* §9799.55(b)(3).

- Persons convicted of the following crimes are subjected to a ten-year registration period: kidnapping, indecent assault, incest, prostitution, obscene and sexual materials, sexual abuse of children, unlawful contact with a minor, sexual exploitation of children, luring a child into a motor vehicle, and institutional sexual assault. 42 Pa.C.S. §9799.55(a).

- Persons convicted of the following crimes, SVPs, and offenders convicted of two or more of the ten-year reporting crimes are subject to lifetime registration: rape, IDSI, sexual assault, aggravated indecent assault, and incest with a child under the age of twelve. 42 Pa.C.S. §9799.55(b).

- A number of crimes, which were included in SORNA, and are not necessarily sexually related, were removed from the list of triggering offenses in Subchapter I, including, but not limited to, the following: unlawful restraint, false imprisonment, interference with custody of children, and invasion of privacy.

- A non-SVP must report in person once per year at an approved facility to verify their residence and be photographed. 42 Pa.C.S. §§9799.60(b), 9799.54(b). An SVP must report in person four times per year. *Id.* §9799.60(a).

- All offenders must contact the PSP within three days of any change to their registration information, including changes to residence, employment, or education. However, Subchapter I does not require that the offender must appear in person to satisfy this obligation. 42 Pa.C.S. §9799.56(a)(2).

- Generally, failure to comply with the registration requirements results in a felony prosecution. 42 Pa.C.S. §9799.60(e); 18 Pa.C.S. §4915.2(b), (c).

- The subchapter also establishes a website to be operated in conjunction with the statewide registry. The website will publish the following information as to each offender: (1) name and known aliases; (2) year of birth; (3) the address, municipality, county, and zip code of any residence at which the offender lives; (4) the location of any schools attended by the offender; (5) the address of any employment location; (6) a photograph of the offender that must be updated at least once per year; (7) a physical description of the offender, including sex, height, weight, eye color, hair color, and race; (8) any identifying marks, including tattoos, scars, or birthmarks; (9) the license plate number and a description for any vehicle owned or registered to the offender; (10) a status report regarding whether the offender is compliant with the terms of

SORNA; (11) an indication of whether the offender's victim was a minor; (12) a description of the offense committed by the offender; (13) the dates of the offense and conviction; and (14) the location of the offender's temporary shelter and where the offender receives mail, if the offender is homeless. 42 Pa.C.S. §9799.63(c).

• If a member of the public so desires, the website will alert that person by electronic notification if an offender moves in or out of the geographic area designated by the person. 42 Pa.C.S. §9799.63(b)(7).

• Finally, an SVP or lifetime reporter can petition a court to be removed from the statewide registry. At the time of the petition, the SVP must not have been convicted of any crime punishable by one year or longer after being released from prison or after registering for the first time, whichever is later, for a period of twenty-five years. Also, the offender must be reviewed by a member of the Sexual Offender Assessment Board. The SVP or lifetime reporter must demonstrate by clear and convincing evidence that he or she no longer poses a risk, or a threat of risk, to the public or any individual person. 42 Pa.C.S. §9799.59(a).

### III. Preliminary Procedural Issues

As we have stated, unlike Witmayer, Lacombe did not challenge the propriety of his sex offender registration status in a timely filed PCRA petition, but instead filed a "Petition to Terminate His Sexual Offender Registration Requirements." The Commonwealth and OAG contend Lacombe was required to challenge his sex offender registration status within the confines of the PCRA. *See* Commonwealth's Brief at 56-59; OAG's Brief at 46. Due to Lacombe's failure to file a PCRA petition, and his concomitant failure to satisfy one of the exceptions to the PCRA's timeliness requirements, *see* 42 Pa.C.S. §9545(b), the Commonwealth and OAG argue the trial court lacked jurisdiction to consider Lacombe's petition. Commonwealth's Brief at 56-62; OAG's Brief at 46-48. In response, Lacombe claims "the fundamental flaw with the Commonwealth's argument is that it relies on circular logic[;]" "the court's determination of whether it has jurisdiction to decide the merits of the claim, would depend upon the court's determination of the merits of the claim." Lacombe's Brief at 36. Lacombe further

claims that, "under the Commonwealth's argument, the General Assembly could enact legislation ten (10) years after a defendant's sentence became final which required all persons convicted of a sexually violent offense to be confined to an institution for an additional thirty (30) days, and the defendant would have no judicial recourse." *Id.* Lastly, Lacombe contends his petition was timely because it should be considered a challenge to the judgment of sentence, and thus "the one-year filing limitation applicable to PCRA[ petitions] would begin to run from the effective date of the legislation that imposed the challenged registration requirements[.]" *Id.* at 36-37.

This Court has not yet required that sexual offender registration statutes be challenged through the PCRA or some other procedural mechanism. Indeed, we have consistently decided cases regarding sexual offender registration statutes that were challenged via different types of filings. *See Muniz*, *supra* (successful challenge to constitutionality of SORNA via direct appeal), *Commonwealth v. Martinez*, 147 A.3d 517, 523 (Pa. 2016) (successful challenge to increase of registration term through "Petition to Enforce Plea Agreement or for a Writ of Habeas Corpus" where PCRA petition would have been untimely), *A.S. v. Pa. State Police*, 143 A.3d 896, 903 n.7 (Pa. 2016) (successful challenge to registration term through *mandamus* action against PSP), *Williams II*, *supra* (unsuccessful challenge to constitutionality of Megan's Law II through "Motion for Extraordinary Relief" and "Motion for Relief"). Our approach in this regard takes into account the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final.

This is especially so under the PCRA as many registrants, Lacombe included, would be ineligible for relief on timeliness grounds. *See* 42 Pa.C.S. §9545(b)(1) (PCRA

petition must be filed within one year of judgment of sentence becoming final unless exception applies). Other registrants may be ineligible because their sentence has expired while their registration requirements continue. *See* 42 Pa.C.S. §9543(a)(1) (PCRA petitioner must be serving sentence to be eligible for relief). Both situations arise from the fact that the registration period does not begin until registrants are released from prison, which may be well after their sentence has become final or may signal the completion of their sentence. Accordingly, we decline to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes and we thus conclude the trial court had jurisdiction to consider Lacombe's "Petition to Terminate His Sexual Offender Registration Requirements."

## IV. *Ex Post Facto* Analysis

As stated above, the threshold question for determining whether the retroactive application of Subchapter I to appellees violates the constitutional prohibition against *ex post facto* laws is whether the requirements of Subchapter I constitute criminal punishment. *See Muniz*, 164 A.3d at 1208 ("Our decision regarding violation of [the *ex post facto*] clause depends on the determination of whether SORNA's retroactive application to [Muniz] constitutes punishment."). Accordingly, we apply the two-part analysis employed in *Muniz* and previous cases:

> We first consider whether the General Assembly's "intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent." *Williams II*, 832 A.2d at 971. If we find the General Assembly intended to enact a civil scheme, we then must determine whether the law is punitive in effect by considering the *Mendoza-Martinez* factors. *Id.* at 972. We recognize only the "clearest proof" may establish that a law is punitive in effect. [*Commonwealth v. Lee*, 935 A.2d 865, 876-77 (Pa. 2007)]. Furthermore, in determining whether a statute is civil or punitive, we must examine the law's entire statutory scheme. *Smith*, 538 U.S. at 92.

*Id.*

## A. Intent of General Assembly

The parties do not dispute that the General Assembly's purpose in enacting Subchapter I was non-punitive, that is, it intended to enact a civil regulatory scheme. The General Assembly stated the purpose of Subchapter I is to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood." 42 Pa.C.S. §9799.51(b)(1). Further, the General Assembly expressly declared that Subchapter I "shall not be construed as punitive." *Id.* §9799.51(b)(2). We therefore proceed to the second part of our *ex post facto* analysis.

## B. *Mendoza-Martinez* Factors

### i. Whether Subchapter I Involves an Affirmative Disability or Restraint

The Commonwealth argues Subchapter I does not involve an affirmative disability or restraint because its requirements are minimal and much less onerous than those imposed by SORNA. Commonwealth's Brief at 28, 33.[9] The Commonwealth specifically points out the fact that Subchapter I reduces in-person reporting requirements, the length of registration, and the list of registerable offenses as compared to SORNA, and adds a removal mechanism. *Id.* at 30-31.

Lacombe argues Subchapter I's reduction of in-person reporting is minimal and the removal mechanism is illusory as it is nearly impossible to comply with and achieve. Lacombe's Brief at 17. Lacombe ultimately contends the "slight reduction in the

---

[9] The briefs filed by the Commonwealth in the present appeals are nearly identical with regard to the Commonwealth's *Mendoza-Martinez* analysis; we use the brief filed in Lacombe's case to summarize the Commonwealth's arguments. We also provide arguments of the OAG, where necessary, using the brief it filed in Lacombe's case.

frequency of in-person reporting for non-SVPs and the illusory procedure for removal from the registry fall[ ] woefully short of alleviating the affirmative disabilities and restraints that so concerned this Court in . . . *Muniz*." *Id.* at 18. Witmayer adds that Subchapter I also imposes secondary disabilities and restraints impacting "a person's social and psychological well-being, his ability to find and keep housing, employment and schooling, the likelihood he will be subject to violence, and his ability to travel out of state[,]" all of which "flow directly and inevitably from registration." Witmayer's Brief at 35.

We agree with Commonwealth as to this factor. Subchapter I has significantly reduced in-person reporting requirements that alleviate many of the concerns expressed in *Muniz*, and we thus conclude Subchapter I does not impose an affirmative disability or restraint. Although in *Muniz* we distinguished SORNA from the statute at issue in *Smith*[10] due to SORNA's in-person reporting requirements, *see Muniz*, 164 A.3d at 1210, we focused on the frequency of in-person reporting required under SORNA. In *Muniz*, we specifically stated as follows: "[Muniz] . . . is now required to appear in person at a registration site four times a year, a minimum of 100 times over the next twenty-five years, extending for the remainder of his life. In fact, this is the minimum number of times [Muniz] will have to appear in person, and does not account for the times he must appear due to his 'free' choices including moving to a new address or changing his appearance." *Id.* at 1210-11 (internal citations, quotations, and footnote omitted).

Subchapter I offenders are now required to report in person annually rather than quarterly, 42 Pa.C.S. §9799.60(b), which limits the in-person appearances of lifetime registrants to twenty-five times over a twenty-five year period as compared to 100 times

---

[10] The Alaska statute, which did not require in-person reporting, was determined not to involve an affirmative disability or restraint. *Smith*, 538 U.S. at 99-101.

over a twenty-five year period, which was determined to be an affirmative disability or restraint in *Muniz*. The currently-required annual appearance is necessary to maintain a useful updated photograph on the Megan's Law website. Furthermore, Subchapter I offenders are no longer required to appear in person to report changes to registration-related information. 42 Pa.C.S. §9799.56(a)(2).[11] As well, the majority of these offenders are subject only to a ten-year reporting requirement rather than the fifteen or twenty-five year periods considered in *Muniz*, *compare* 42 Pa.C.S. §9799.55 *with* 42 Pa.C.S. §9799.15(a) (effective Dec. 20, 2012 through Feb. 20, 2018), and lifetime registrants may now petition for removal from the registry after twenty-five years. 42 Pa.C.S. §9799.59. The in-person reporting requirements that remain in Subchapter I are minimal and clearly necessary, and we thus find Subchapter I does not impose any direct affirmative disability or restraint.[12] Additionally, "minor and indirect" restraints and disabilities, such as those cited by Witmayer, are nonpunitive. *See Smith*, 538 U.S. at 100 ("If the disability or restraint is minor and indirect, its effects are unlikely to be

---

[11] Although the statute does not include any mandatory method for reporting changes to registration-related information, it is clear that Subchapter I offenders may report such changes by mail using a change of information form provided by the PSP on the Megan's Law Website, which includes instructions; the form states it is only for use by Subchapter I offenders as those subject to Subchapter H must appear in person to update their registration-related information. *See* Sexual Offender Update Form, https://www.pameganslaw.state.pa.us/Documents/Sexual%20Offender%20Registratio n %20-%20SP%204-218%20Public.pdf (last visited May 13, 2020).

[12] The dissent suggests the fact that yearly in-person reports are necessary to maintain a current registry is irrelevant to the "prior assessment of whether the statute imposes a disability or restraint," and requires a "complicated and elusive line-drawing exercise." Dissenting Opinion, slip op at 32-33. We disagree with this characterization and emphasize that the benefit of the annual reporting requirement, and its infrequency, combine to distinguish our analysis in this case from *Muniz*, and a sexual offender registration statute requiring "two" or "three" in-person appearances per year is simply not before this Court. *Id*. at 33.

punitive.").  Accordingly, we conclude this factor weighs in favor of finding Subchapter I nonpunitive.

## ii. Whether Subchapter I's Requirements Have Been Historically Regarded as Punishment

The Commonwealth argues "Subchapter I's requirements are nothing like colonial era punishments" as they do not "involve physical pain or direct public confrontation, nor are they meant to stigmatize offenders."  Commonwealth's Brief at 34.  Noting the *Muniz* Court came to a different conclusion regarding the statutory requirements considered therein, the Commonwealth contends Subchapter I is distinguishable from SORNA as to this factor because the number of offenders subject to registration has been reduced, less disclosure of information about offenders is required, *see* 42 Pa.C.S. §9799.63(c),[13] and offenders can now prove rehabilitation by way of the removal mechanism. Commonwealth's Brief at 36-37.  With regard to probation, the Commonwealth argues the *Muniz* Court disregarded "critical procedural differences between violations of probation and violations for non-compliance" such as the fact that "because non-compliance with registration requirements is its own offense, it comes with all the safeguards attendant to the criminal process[.]"  *Id.* at 38-39.

In response, Lacombe contends "[t]he internet registry prescribed by Subchapter I at [Section] 9799.63, is indistinguishable from the internet registry under SORNA" as Section 9799.63(c), by using the word "shall," still mandates that registration information be posted on the internet.  Lacombe's Brief at 20-21.  As such, Lacombe argues "this

---

[13] Section 9799.63(c) is titled "Information **permitted** to be disclosed regarding individuals[,]" 42 Pa.C.S. §9799.63(c) (emphasis added), as compared with Section 9799.28(b) which is titled "**Required** information."  42 Pa.C.S. §9799.28(b) (emphasis added).  However, as discussed below, Section 9799.63(c) states "the Internet website **shall** contain the following information . . .[,]" which requires such information be posted on the internet just as in Section 9799.28(b).  42 Pa.C.S. §9799.63(c) (emphasis added).

Court's analysis of [SORNA's similarity to public shaming due to] the internet registry in *Muniz* applies with equal force and effect to Subchapter I." *Id.* at 20. With respect to probation, Lacombe contends Subchapter I still requires reporting and other conditions which are similar to probation and the *Muniz* analysis should control. *Id.* at 24-25.[14]

We reject the Commonwealth's argument on this factor and find no reason to deviate from our corresponding analysis in *Muniz*. In *Muniz*, we stated:

> The United States Supreme Court has distinguished colonial-era public shaming punishments from sex offender registration laws by noting public shaming "involved more than the dissemination of information" but also "held the person up before his fellow citizens for face-to-face shaming or expelled him from the community." *Smith*, 538 U.S. at 98. The *Smith* Court found the sex offender information disseminated through the Alaska statute is accurate and, for the most part, already public. *Id.* The Court noted the publicity may cause embarrassment or ostracism for the convicted, but found "the publicity and resulting stigma [is not] an integral part of the objective of the regulatory scheme." *Id.* at 99. The Court also stated the fact the information is posted on the internet did not alter its conclusion since the intent of the posting is to inform the public for its own safety, the website itself does not provide the public with a means to shame the offender, and members of the public must affirmatively seek out the information. *Id.*
>
> As stated above, we recognize the significance of the *Smith* Court's decision with regard to its analysis of the Alaska statute. However, *Smith* was decided in an earlier technological environment. The concurring expression by now-Justice Donohue in [*Commonwealth v. Perez*, 97 A.3d 747 (Pa. Super. 2014)] has particular force on this point:
>
> > The environment has changed significantly with the advancements in technology since the Supreme Court's 2003 decision in *Smith*. As of the most recent report by the United States Census Bureau, approximately 75 percent of households in the United States have internet access. Yesterday's face-to-face shaming punishment can now be accomplished online, and an individual's presence in cyberspace is omnipresent. The public internet website

---

[14] Witmayer's arguments regarding this factor are substantially similar to those of Lacombe.

utilized by the Pennsylvania State Police broadcasts worldwide, for an extended period of time, the personal identification information of individuals who have served their "sentences." This exposes registrants to ostracism and harassment without any mechanism to prove rehabilitation— even through the clearest proof. In my opinion, the extended registration period and the worldwide dissemination of registrants' information authorized by SORNA now outweighs the public safety interest of the government so as to disallow a finding that it is merely regulatory.

*Perez*, 97 A.3d at 765-66 (Donohue, J., concurring).

Furthermore, although the *Smith* Court ultimately rejected the argument Alaska's registration system was like probation because it did not impose mandatory conditions, the High Court nevertheless recognized the argument has "some force" and the argument is therefore even more compelling where SORNA does impose such conditions. *See Id.* at 763 (Donohue, J. concurring), *citing Smith*, 538 U.S. at 101. It is clear the Alaska statute at issue in *Smith* and SORNA are materially different in this regard. As our analysis of the similarity to probation would be nearly identical to Justice Donohue's analysis of the issue in *Perez*, we again quote from her concurring opinion with minimal, bracketed, differences arising out of appellant's status as a Tier III offender:

> In contrast, the mandatory in-person verification requirement in Section 9799.15(e) not only creates an affirmative restraint upon [appellant], requiring him to appear at a designated facility a minimum of [100] times over the next 25 years[, extending for the remainder of his life,] as a Tier [III] offender, but also greatly resembles the periodic meetings with probation officers imposed on probationers. … [B]ecause SORNA differs significantly from the statute at issue in *Smith*, these disparities must be considered.

> In [*Williams II*,] the Pennsylvania Supreme Court found that probation has historically been considered a traditional form of punishment. *Williams [II]*, 832 A.2d at 977. Probation entails a set of mandatory conditions imposed on an individual who has either been released after serving a prison sentence, or has been sentenced to probation in lieu of prison time. 42 Pa.C.S. §9754. These conditions can include psychiatric treatment, limitations on travel, and notifying a probation

officer when any change of employment or residency occurs. 42 Pa.C.S. §9754(c). Probationers are also subject to incarceration for a violation of any condition of their probation. 42 Pa.C.S. §9771.

Like the conditions imposed on probationers, registrants under SORNA must notify the state police of a change in residence or employment. 42 Pa.C.S. §9799.15(g). Offenders also face incarceration for any non-compliance with the registration requirements. 42 Pa.C.S. §9799.22(a). Furthermore, SORNA requires registrants who do not have a fixed place of work to provide "general travel routes and general areas where the individual works" in order to be in compliance. 42 Pa.C.S. §9799.16. The Supreme Court in *Smith* stated that "[a] sex offender who fails to comply with the reporting requirement may be subjected to criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense." *Smith*, 538 U.S. at 101-02. However, violations for noncompliance with both probation and SORNA registration requirements are procedurally parallel. Both require further factual findings to determine whether a violation has actually occurred. 42 Pa.C.S. §§9771(d), 9799.21. Similarly, but for the original underlying offense, neither would be subject to the mandatory conditions from which the potential violation stems. The parallels between the SORNA registration requirements and probation lead me to conclude that factor two of the [*Mendoza-Martinez*] test leans towards a finding that SORNA is punitive.

*See Perez*, 97 A.3d at 763-64 (Donohue, J. concurring).

We conclude the weighing process with regard to this *Mendoza-Martinez* factor presents a much closer case than the *Smith* Court's analysis of Alaska's registration statute in 2003. We consider SORNA's publication provisions—when viewed in the context of our current internet-based world—to be comparable to shaming punishments. We also find SORNA and the Alaska statute are materially different in their mandatory conditions such that SORNA is more akin to probation. We therefore hold this factor weighs in favor of finding SORNA's effect to be punitive.

*Muniz*, 164 A.3d at 1212-13.

Similar to SORNA, Subchapter I directs the PSP "shall" operate and maintain a publicly accessible internet website and upload a plethora of information about each offender. 42 Pa.C.S. §9799.63(b), (c). Subchapter I further directs the PSP to "develop, implement and maintain a process which allows members of the public to receive electronic notification when an individual required to register under [Subchapter I] moves into or out of a user-designated location." *Id.* §9799.63(b)(7). As such, we are constrained to find the requirements of Subchapter I are akin to public shaming. We are also persuaded the requirements of Subchapter I are akin to probation; just as with SORNA, Subchapter I imposes mandatory conditions such as the in-person verification requirements, 42 Pa.C.S. §9799.60, a requirement that offenders notify the PSP of changes to their registration information, 42 Pa.C.S. §9799.56(a)(2), and penalties for noncompliance, 42 Pa.C.S. §9799.60(e); 18 Pa.C.S. §4915.2(b), (c). Accordingly, we find this factor weighs in favor of finding Subchapter I punitive.

### iii. Whether Subchapter I Comes into Play Only on a Finding of Scienter

The parties agree, as do we, that "this factor is of little significance to our inquiry." *Muniz*, 164 A.3d at 1214 (citation omitted). As stated in *Muniz,* "where the concern of a sex offender registration statute like SORNA is protecting the public against recidivism, past criminal conduct is 'a necessary beginning point.'" *Id.*, *quoting Smith*, 538 U.S. at 105. As the changes effected by Subchapter I provide no reason to depart from *Muniz* with regard to this factor, we accordingly assign it little weight.

### iv. Whether the Operation of Subchapter I Promotes the Traditional Aims of Punishment

The Commonwealth contends Subchapter I does not promote deterrence and claims this case is distinguishable from *Muniz* since "Subchapter I mandates a ten-year period of registration for twelve offenses, many of which are felonies carrying maximum sentences of as much as seven to twenty years[,]" which makes it "unlikely that the prospect of subsequent registration for a limited period of time would have a significant deterrent effect on a sexual offender."  Commonwealth's Brief at 44.  Regarding retribution, the Commonwealth argues Subchapter I does not operate to affix culpability for prior criminal conduct, but instead "serves the remedial purpose of protecting innocent persons from victimization[.]"  *Id.* at 46 (internal citation and quotation omitted).  The OAG adds that the criminal penalty for failure to comply with Subchapter I's registration requirements is not relevant to determining whether Subchapter I promotes the traditional aims of punishment because "[t]he mere fact that a statute makes failure to comply with a civil requirement — such as paying one's taxes — criminal, does not transform the underlying civil component into criminal punishment."  OAG's Brief at 38.

Lacombe argues the *Muniz* Court's concerns regarding deterrence and retribution have not been alleviated with the passage of Subchapter I because those convicted of certain registerable offenses "might very well receive a probationary sentence, but would be required to register as a sex offender for ten [ ] years."  Lacombe's Brief at 26-27.  Witmayer adds that "disproportionate retribution is an obvious goal served by [Subchapter I]" as "[t]he underlying conviction is the necessary and the sufficient trigger for registration; the individual cannot avoid retribution by doing nothing further."  Witmayer's Brief at 41.  However, Witmayer concedes that Subchapter I "cannot seek deterrence as a rationale for the law as the law is exclusively retroactive."  *Id.*

We agree with appellees that Subchapter I promotes retribution just as we found SORNA to promote retribution in *Muniz*. 164 A.3d at 1216. However, we also agree with Witmayer that Subchapter I "cannot seek deterrence as a rationale for the law as the law is exclusively retroactive." Witmayer's Brief at 41. In other words, Subchapter I registrants cannot be deterred from committing the criminal activity for which they are required to register since those crimes have already occurred.[15]

The same can be said for the removal mechanism. Although the removal mechanism provides an incentive to refrain from commission of new criminal offenses, this provision clearly does not deter the initial criminal activity. Furthermore, we agree with the OAG that the penalties for failure to comply with registration, 18 Pa.C.S.

_____

[15] Further, even if Subchapter I was applied prospectively only, it would still be distinguishable from SORNA; Subchapter I includes only the "mere presence" of a deterrent purpose. *See Smith*, 538 U.S. at 102 ("the mere presence of a deterrent purpose" does not "render[ ] such sanctions criminal") (citation and quotation omitted). The *Muniz* Court focused on (and found problematic) SORNA's application to offenders convicted of a multitude of minor crimes, including many having no sexual component at all. 164 A.3d at 1215. In Subchapter I, however, the General Assembly removed these minor, non-sexual crimes. *See id.* at 1218. Although there remains some imbalance between the registration terms and the maximum penalties prescribed to each predicate offense covered by Subchapter I (for example, persons convicted of indecent assault graded as a first-degree misdemeanor, 18 Pa.C.S. §3126, must register for a period of ten years pursuant to 42 Pa.C.S. §9799.55(a), but only face a maximum prison term of five years under 18 Pa.C.S. §106(b)(6)), this imbalance is minimal and the problems exposed in *Muniz* have been resolved. For instance, the predicate offenses under Subchapter I no longer include federal crimes that have a maximum penalty of two years of incarceration, *see Muniz*, 164 A.3d at 1215 n.20, and most predicate offenses in Subchapter I are felonies. *See* OAG's Brief at 36 n.26 ("Fourteen registerable crimes are felony offenses. 18 Pa.C.S. §§2901(b), 4302(a), 4302(b)(1), 4302(b)(2), 5902(b.1), 6312(d.1), 6318(b), 6320(b), 3121, 3123, 3124.1, 3124.2, 3125(c), 3126(b)(3). Two registerable crimes have the potential to be either a misdemeanor or a felony. *Id.* at §§2910(a.1), 5902(c). Two registerable crimes are misdemeanors of the first degree, which carry a potential of five years' imprisonment. *Id.* at §§3126, 5903(h)(1); *see also id.* at §1104(1)."). Moreover, the registration term for these offenses is only ten years, 42 Pa.C.S. §9799.55, as opposed to fifteen or twenty-five years in SORNA. 42 Pa.C.S. §§9799.14(b)-(c) (effective Sept. 2, 2014 through Feb. 20, 2018), 9799.15(a) (effective Dec. 20, 2012 through Feb. 20, 2018).

§4915.2, do not promote deterrence. *See* OAG's Brief at 38 (fact that statute criminalizes failure to comply with civil requirement does not transform underlying civil component into criminal punishment). Accordingly, we weigh this factor in favor of finding Subchapter I punitive but give it much less weight than in *Muniz* because Subchapter I is not aimed at deterrence.[16]

### v. Whether the Behavior to which Subchapter I Applies is Already a Crime

Although Lacombe and Witmayer argue this factor should weigh in favor of finding Subchapter I punitive, they concede it is of little weight in our analysis. In *Muniz*, we stated "[a]s with the third *Mendoza-Martinez* factor discussed above, this factor carries little weigh in the balance. We again recognize where SORNA is aimed at protecting the public against recidivism, past criminal conduct is 'a necessary beginning point.'" 164 A.3d at 1216, *quoting Smith*, 538 U.S. at 105. As stated in our discussion of the third *Mendoza-Martinez* factor in the present matter, Subchapter I provides no reason to depart from our analysis in *Muniz* and thus, we assign little weight to this factor.

### vi. Whether there is an Alternative Purpose to which Subchapter I may be Rationally Connected

The parties do not dispute that there is an alternative purpose, other than punishment, to which Subchapter I is rationally connected. As stated above, the General Assembly declared that the purpose of Subchapter I is to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community

---

[16] In his dissent, Justice Wecht criticizes what he deems an unsupported "limited view of deterrence[,]" Dissenting Opinion, slip op. at 38, but his reliance on our statement in *Muniz* that "'the prospect of being labeled a sex offender accompanied by registration requirements and the public dissemination of an offender's personal information over the internet has a deterrent effect'" actually undermines his more expansive view. *Id.*, *quoting Muniz*, 164 A.3d at 1215. The reference in *Muniz* to the "prospect" of becoming a registered sex offender speaks specifically to individuals who have not yet committed the initial criminal activity and may thus be deterred by the statute from engaging in such activity.

notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood." 42 Pa.C.S. §9799.51(b)(1). Such purpose is based on the General Assembly's finding that "sexually violent predators and offenders pose a high risk of engaging in further offenses even after being released from incarceration or commitments, and protection of the public from this type of offender is a paramount government interest." *Id.* §9799.51(a)(2). As we stated in *Muniz,* "[a]lthough there are contrary scientific studies, we note there is by no means a consensus, and as such, we defer to the General Assembly's findings on this issue." 164 A.3d at 1217.[17] Accordingly, we conclude there is a purpose other than punishment to which Subchapter I may be rationally connected — protecting and informing the public regarding sexual offenders the General Assembly considers dangerous — and this factor clearly weighs in favor of finding Subchapter I nonpunitive.

### vii. Whether Subchapter I is Excessive in Relation to the Alternative Purpose Assigned

The Commonwealth argues Subchapter I is not excessive, but reasonable in light of its stated purpose, "given that Subchapter I has slashed its list of registerable offenses, the majority of which contain a sexual component, along with the reduced in-person reporting, and the mechanism for removal from the registry[.]" Commonwealth's Brief at 53-54. As such, the Commonwealth contends "Subchapter I's requirements are not so extremely onerous in relation to their purpose as to constitute punishment." *Id.* at 54 (internal citation and quotation omitted).

---

[17] These findings by the General Assembly were not challenged by appellees here as they were in *Torsilieri*.

Lacombe claims "Subchapter I is sweepingly over broad" as it "still requires the blanket registration of all offenders convicted of a predicate enumerated offense regardless of that individual's actual likelihood, or continued likelihood of reoffending" and, "with the exception of the illusory process . . . for being removed from the registry after twenty-five [ ] years, Subchapter I offers no procedure by which [an offender] can show, in the first instance, that he or she does not pose an actual risk of re-offense." Lacombe's Brief at 29-30.[18]

We are substantially aligned with the Commonwealth as to this factor. The General Assembly removed a plethora of previously qualifying offenses when it enacted Subchapter I, *compare* 42 Pa.C.S. §9799.59 *with* 42 Pa.C.S. §§9799.14(b)-(d) (effective Sept. 2, 2014 through Feb. 20, 2018), and thus, made the new enactment much less likely to "result in individuals . . . who in fact do not pose the type of risk to the community that the General Assembly sought to guard against" being labeled as sex offenders. *Williams II*, 832 A.2d at 983. The General Assembly also lowered the registration term for many offenses from fifteen and twenty-five years to ten years, *compare* 42 Pa.C.S. §9799.55 *with* 42 Pa.C.S. §9799.15(a) (effective Dec. 20, 2012 through Feb. 20, 2018), and significantly reduced the in-person reporting requirements so that Subchapter I offenders must only report in person annually, *compare* 42 Pa.C.S. §9799.60(b) *with* 42 Pa.C.S. §9799.15(e) (effective Dec. 20, 2012 through Feb. 20, 2018). And, as stated previously, this latter requirement is necessary to capture and upload a current photograph on the Megan's Law website. Also necessary for public protection is the prompt reporting of any changes to the Subchapter I offender's registration information, *see* 42 Pa.C.S. §9799.56(a)(2), and prosecution for failure to comply under 18 Pa.C.S

---

[18] Witmayer's arguments regarding this factor are substantially similar to those of Lacombe.

§4915.1 is also necessary to ensure compliance with the mandates of Subchapter I. Moreover, Subchapter I provides a removal mechanism for lifetime registrants, the absence of which has created excessiveness concerns for this Court. *See Williams II*, 832 A.2d at 982-83 ("A reasonable argument could be made that, to avoid excessiveness, the Legislature was required to provide some means . . . to invoke judicial review[.] . . . This aspect of the statute may be particularly problematic[.]"). For these reasons, we find the Subchapter I requirements are necessary, rather than excessive, in relation to the statute's alternative assigned purpose of protecting the public from sex offenders. Accordingly, this factor weighs heavily in favor of finding Subchapter I nonpunitive.

### viii. Balancing of the Factors

As the above *Mendoza-Martinez* analysis clearly reflects, Subchapter I effected significant changes from the original version of SORNA, retroactive application of which we found unconstitutional in *Muniz*. To summarize, we find three of the five factors weigh in favor of finding Subchapter I nonpunitive. Additionally, we give little weight to the fact Subchapter I promotes the traditional aims of punishment and give significant weight to the fact Subchapter I is narrowly tailored to its nonpunitive purpose of protecting the public. As we have not found the requisite "clearest proof" Subchapter I is punitive, we may not "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty[.]" *Hudson v. United States*, 522 U.S. 93, 100 (1997), *quoting United States v. Ward*, 448 U.S. 242, 249 (1980) (internal quotations omitted).

### V. Conclusion

We hold Subchapter I does not constitute criminal punishment, and the *ex post facto* claims forwarded by appellees necessarily fail. *See Muniz*, 164 A.3d at 1208 ("Our decision regarding violation of [the *ex post facto*] clause depends on a determination of

whether SORNA's retroactive application to [Muniz] constitutes punishment."). Accordingly, we reverse the orders of the Montgomery County Court of Common Pleas relieving appellees of their duty to comply with Subchapter I.

Chief Justice Saylor and Justices Baer and Todd join the opinion.

Justice Mundy files a concurring opinion.

Justice Wecht files a concurring and dissenting opinion in which Justice Donohue joins.